336 So.2d 71 (1976)
Mercedes M. RAMOS, Petitioner,
v.
NORTHWESTERN MUTUAL INSURANCE COMPANY and Lawrence J. Williams, Respondents.
No. 48510.
Supreme Court of Florida.
May 26, 1976.
Rehearing Denied August 31, 1976.
*72 Edward A. Perse, of Horton, Perse & Ginsberg, and Grover Ciment, Weinstein & Stauber, Miami Beach, for petitioner.
Magill & Sevier, P.A., and Jeanne Heyward, Miami, for respondents.
ROBERTS, Justice.
This cause is before us on petition for writ of certiorari, buttressed by the District Court of Appeal, Third District's certificate that in disposing of the cause, it had passed upon a question of great public interest. We have jurisdiction pursuant to Article V, Section 3(b)(3).
The controlling question in the cause certified to us by the District Court involves whether or not an automobile insurance carrier may still be permitted to avoid liability pursuant to a provision in its contract requiring the insured to give his cooperation in connection with any claim of which the carrier would have responsibility under the contract notwithstanding recent developments in the law. These recent developments referred to include Florida's Financial Responsibility Act,[1] provisions contained in Florida Automobile Reparations Reform Act, and decisions of this Court including Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), Beta Eta House Corp., Inc. v. Gregory, 237 So.2d 163 (Fla. 1970), Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla. 1971), Stecher v. Pomeroy, 253 So.2d 421 (Fla. 1971), Godshall v. Unigard Ins. Co., 281 So.2d 499 (Fla. 1973), and Allred v. Chittenden Pool Supply Co., Inc., 298 So.2d 361 (Fla. 1974).
Petitioner, Mercedes Ramos, sued Lawrence Williams and Respondent Northwestern Mutual Insurance Company to recover for injuries resulting from an automobile collision proximately caused by the negligence of Williams. Respondent Northwestern answered admitting the issuance of the policy of automobile liability insurance to defendant Williams but further affirmatively alleging that the policy of insurance does not provide coverage for the defendant in this case because the accident was not reported by him to his insurance carrier nor has he cooperated with Northwestern as required by the terms of the policy of automobile liability insurance. The trial judge granted Northwestern's motion to sever the trial on coverage from the original claim relating to liability and damages. Except as to the issue of coverage the cause proceeded by jury trial on October 21, 1974, and verdict was returned in the amount of $52,037.00. Final judgment was entered against Williams in the amount of $52,037.00. Entry of judgment with respect to Northwestern was reserved by the trial court for determination at a later date.
*73 After non-jury trial on the issue of insurance coverage, examination of the pleadings, evidence, and memoranda of law submitted by the respective parties, the trial court entered final judgment finding no coverage by the insurance carrier because of the total non-cooperation of the insured. Specifically, the trial court made the following findings of fact and conclusions of law:
"1. The plaintiff and Lawrence J. Williams, hereinafter referred to as WILLIAMS, were involved in a motor vehicular accident on November 28, 1969. At the time, WILLIAMS was the insured under a policy of automobile liability insurance issued by Northwestern Mutual Insurance Company, hereinafter referred to as NORTHWESTERN.
"2. On August 9, 1971, the plaintiff initiated this action against WILLIAMS and NORTHWESTERN.
"3. NORTHWESTERN answered plaintiff's complaint alleging, among other things, that there was no coverage for WILLIAMS because of his failure to give NORTHWESTERN notice of the accident and his failure to cooperate with NORTHWESTERN.
"4. Actual service of process was never made upon WILLIAMS, notwithstanding valiant and persistent efforts by plaintiff's counsel to locate WILLIAMS and effect such service.
"5. Upon appropriate motion the Court found that WILLIAMS was concealing his whereabouts and attempting to avoid service of process and, accordingly, impressed jurisdiction over WILLIAMS on May 2, 1974.
"6. The cause proceeded to trial, except as to the issue of coverage, on October 21, 1974, and verdict was returned for plaintiff in the sum of $52,037.00.
"7. NORTHWESTERN received notice of the accident from plaintiff's counsel on December 29, 1969. However, WILLIAMS never contacted NORTHWESTERN, failed to report the accident, failed to notify NORTHWESTERN of his apparent changes of address and, despite efforts of NORTHWESTERN and plaintiff's counsel, was never located.
"8. WILLIAMS breached the terms of the policy issued by NORTHWESTERN because of his total failure to cooperate. Further, the breach was material and substantially prejudiced NORTHWESTERN.

"It is, therefore, the opinion and judgment of this Court that WILLIAMS was not entitled to coverage under the policy and that NORTHWESTERN was correct in its denial of coverage. The plaintiff relies in part upon the case of American Fire and Casualty Company v. Collura, Fla.[App.] 1964, 163 So.2d 784. Such reliance, however, is misplaced because there the insured notified his carrier of the accident and his whereabouts were known to all parties throughout the proceedings. Further, in considering the issue of cooperation in that case the Second District Court of Appeal stated at page 788:
"`In considering the issue of breach of a cooperation clause in an insurance policy, it must always be borne in mind that in order for the company to avoid liability by reason of the insured's breach, the company must show that it has exercised diligence and good faith in bringing about the cooperation of the insured, and that it has in good faith complied with the terms and conditions of the policy. [cases cited] On the other hand the insured is bound to cooperate with his insurer and to abide, both in letter and in spirit, with the terms of the contract; or he should at least be held to reasonably strict compliance with the terms thereof.'
"Here, not only did NORTHWESTERN exercise diligence in attempting to *74 locate WILLIAMS but, also, was precluded by WILLIAMS' concealment from `bringing about' his cooperation. Moreover, WILLIAMS totally disregarded his own responsibility in the premises. [Emphases supplied]"
Plaintiff appealed to the District Court of Appeal, Third District, which affirmed the judgment of the trial court although expressly stating that it did so in reliance on past precedent. The District Court opined that the plaintiff made a persuasive argument and but for precedent and this Court's ruling in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), wherein this Court stated that District Courts should not change law as a matter of public policy, the District Court would have been inclined to reverse the trial court's judgment. Relative to existing precedent, the District Court stated:
"Under existing Florida law, we conclude that the trial judge's order should be affirmed. American Fire and Casualty Company v. Vliet, 148 Fla. 568, 4 So.2d 862; American Fire and Casualty Company v. Collura, Fla.App. 1964, 163 So.2d 784; Bordettsky v. Hertz Corporation, Fla.App. 1965, 171 So.2d 174; Anno. 60 ALR2d 1146. However, the appellant has made a persuasive argument that because of the modern trend of requiring that motorists carry insurance [§ 627.733, Fla. Stat.; 7 Am.Jur.2d, Automobile Insurance, §§ 4, 6] insurance carriers are real parties in interest in automobile accident litigation. Stecher v. Pomeroy, Fla. 1971, 253 So.2d 421; Godshall v. Unigard Insurance Company, Fla. 1973, 281 So.2d 499; Allred v. Chittenden Pool Supply Inc., Fla. 1974, 298 So.2d 361. That, because of the mandatory requirements of the no fault insurance act adopted in recent years in Florida, these older decisions should be ignored and the law should be changed as a matter of public policy and a carrier should suffer the responsibility of finding its insured and, if it could not, it should then be required to respond for any damages within the limits of its policy to the injured innocent party and be left to its remedy by seeking indemnification from its insured."
The District Court concluded that it would certify the matter to this Court as one passing upon a question of great public interest in that it determines that, notwithstanding recent developments in the law, an automobile insurance carrier may still be permitted to avoid liability pursuant to a provision in its contract requiring the insured to give his cooperation in connection with any claim of which the carrier would have responsibility under the contract.
Respondent, Insurance Company, suggests in line with past precedent of this Court and other Florida Appellate Courts, that where an insured has a contractual duty to cooperate with the insurer and there is undisputed evidence that the insured failed to cooperate, thereby breaching his contractual obligation to the substantial prejudice of the insurer in that the insurer was (1) unable to confirm that the vehicle listed was the one involved in the accident, (2) unable to determine the liability situation, (3) unable to determine if there were any passengers in the vehicle in order to obtain their version of the intersectional accident and the existence of injuries inasmuch as the police report indicated no visible injuries, and (4) unable to obtain the insured's cooperation in the defense of the case, an automobile insurance carrier may still be permitted to avoid liability based upon lack of cooperation. Respondent posits that neither Florida Statutes nor recent Florida decisions have abrogated the insured's duty to cooperate. Sub judice, the trial court found that the insured failed completely to cooperate with Northwestern Mutual and found that this breach of the terms of the insurance policy was material and substantially prejudiced Northwestern Mutual. Restating the findings *75 and conclusions of the trial court, the District Court affirmed the final judgment denying coverage.
In light of current public policy as reflected by Shingleton v. Bussey, supra, and its progeny, petitioner requests that this Court recede from the Florida decisions which stand for the proposition that an insurer may deny coverage and avoid payment of compensation to the victim of the insured's tort where the insured has been guilty of lack of cooperation which is material and is of such a nature as would substantially prejudice the rights of the insurer, where the insurer has exercised diligence and good faith in seeking to bring about the cooperation of the insured, and where the insurer has in good faith complied with the terms and conditions of the policy.[2]
Relating to petitioner's assertion that the financial responsibility law renders obsolete the defense of prejudicial non-cooperation, the District Court of Appeal, Third District, in Atlantic National Insurance Co. v. Johnson, 178 So.2d 733 (Fla.App. 3, 1965), held that the financial responsibility law does not preclude the insurer from raising the defense of failure to give notice to the insurer for a period of seventeen months after the accident at which time Allstate, the insurer of the other vehicle involved in the accident, notified it.
We are not unmindful of the decisions cited by petitioner, but we adhere to the general philosophy of the precedent set out in American Fire and Casualty Co. v. Vliet, supra; American Fire and Casualty Co. v. Collura, supra; and Bordettsky v. Hertz Corporation, supra. American Universal Insurance Co. v. Stotsberry, 116 So.2d 482 (Fla.App. 3, 1959), Barnes v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 146 So.2d 119 (Fla.App. 3, 1962), cert. den. 153 So.2d 305 (Fla. 1963). We do not feel that the compulsory insurance law or third party beneficiary concept are sufficient justification to recede from that reasoning.
This Court in American Fire and Casualty Co. v. Vliet, supra, emphasized that to constitute the breach of a policy, the lack of cooperation must be material and the insurance company must show that it was substantially prejudiced in the particular case by failure to cooperate. Furthermore, as is stated in Collura, supra, the insurer must show that it has exercised diligence and good faith in bringing about the cooperation of its insured and must show that it has complied in good faith with the terms of the policy.
Not every failure to cooperate will release the insurance company. Only that failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay. The question of whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, but under some circumstances, particularly where the facts are admitted, it may well be a question of law. Cf. Norwich Union Indemnity Co. v. Willis, 124 Fla. 137, 168 So. 418 (1936), American Fire and Casualty Co. v. Vliet, supra, and American Fire and Casualty Co. v. Collura, supra.
Accordingly, the decision of the District Court is affirmed and the writ is discharged.
It is so ordered.
OVERTON, C.J., and ENGLAND and SUNDBERG, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] Section 324.011, Florida Statutes, announcing the purpose of the Financial Responsibility Act provides:

"It is the intent of this chapter to recognize the existing rights of all to own motor vehicles and to operate them on the public streets and highways of this state when such rights are used with due consideration for others; to promote safety, and provide financial security by such owners and operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle, so it is required herein that the owner and operator of a motor vehicle involved in an accident shall respond for such damages and show proof of financial ability to respond for damages in future accidents as a requisite to his future exercise of such privileges."
[2] American Fire and Casualty Co. v. Vliet, supra; American Fire and Casualty Co. v. Collura, supra; Bordettsky v. Hertz Corporation, supra.