930 So.2d 668 (2006)
BELLSOUTH TELECOMMUNICATIONS, INC., Petitioner,
v.
CHURCH & TOWER OF FLORIDA, INC., et al., Respondents.
No. 3D05-1645.
District Court of Appeal of Florida, Third District.
March 15, 2006.
Rehearing and Rehearing Denied June 19, 2006.
*669 Gordon Hargrove & James and Carol A. Gart, Fort Lauderdale, and John R. Hargrove, for petitioner.
Richard A. Sherman, Fort Lauderdale; Julio C. Acosta, Miami, and Michelle C. Lopez; and Richard G. Bartmon, Boca Raton, for respondents.
Before CORTIÑAS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied June 19, 2006.
*670 ROTHENBERG, Judge.
BellSouth Telecommunications, Inc. (BellSouth) petitions for a writ of certiorari, seeking to quash a portion of the trial court's order permitting Liberty Mutual Fire Insurance Company (Liberty), which had initially denied coverage, to take control of the defense, to select counsel of its own choosing, and to defend BellSouth in the personal injury lawsuit. As we conclude that Liberty has forfeited its right to defend, we grant the petition.
The guardian of Marvin Trujillo filed a personal injury action against Florida Power & Light (FP & L), BellSouth, and Church & Tower of Florida, Inc. (Church & Tower). The complaint alleges that Mr. Trujillo was electrocuted when he came into contact with an FP & L power line which was attached to a utility pole owned by BellSouth, and that, as a result of this accident, Mr. Trujillo is now in a permanent vegetative state. The BellSouth utility pole was installed by Church & Tower pursuant to a contract between BellSouth and Church & Tower. In this contract, Church & Tower agreed to obtain insurance covering its operations, naming BellSouth as an additional insured under the policy, and Church & Tower also agreed to indemnify BellSouth. In accordance with this contract, Church & Tower obtained an insurance policy from Liberty. After BellSouth notified Liberty that Mr. Trujillo's guardian had filed a claim against it, Liberty sent a letter to BellSouth stating that BellSouth's notice was untimely, and that based upon the untimely notice, it was denying coverage and would not defend BellSouth in the action.
Thereafter, BellSouth sued Liberty for breach of contract, and after several depositions were taken, moved for summary judgment against Liberty. Prior to the summary judgment hearing, Liberty sent a letter to BellSouth stating that it was no longer denying coverage; it agreed to assume BellSouth's defense; it wished to appoint counsel of its own choosing to represent BellSouth; and it expected BellSouth's cooperation in facilitating the substitution of counsel. At the summary judgment hearing, it was undisputed that Liberty was now accepting coverage. BellSouth, however, objected to Liberty assuming control of the defense with counsel of its own choosing. The trial court concluded that, since BellSouth was insured by Liberty and Liberty had accepted its duty to defend, Liberty should defend BellSouth and would, therefore, have the right to select counsel for that defense. BellSouth's motion for rehearing was denied and BellSouth filed the instant petition for writ of certiorari.
BellSouth argues that the trial court's ruling, permitting Liberty to control the defense through the selection of BellSouth's counsel, is a departure from the essential requirements of the law, and therefore, the order should be quashed. See Belair v. Drew, 770 So.2d 1164, 1166 (Fla.2000)("For an appellate court to review a nonfinal order by petition for certiorari, the petitioner must demonstrate that the trial court departed from the essential requirements of the law, thereby causing irreparable injury which cannot be adequately remedied on appeal following final judgment."); El Cid Condo. Ass'n, Inc., No. II v. Pub. Serv. Mut. Ins. Co.; 780 So.2d 325, 325-26 (Fla. 3d DCA 2001)(finding no basis for a petition for writ of certiorari where petitioner did not demonstrate that the trial court departed from the essential requirements of the law, causing material injury which cannot be adequately remedied on appeal following the entry of final judgment).
It is well-settled law that, when an insurer agrees to defend under a reservation of rights or refuses to defend, the *671 insurer transfers to the insured the power to conduct its own defense, and if it is later determined that the insured was entitled to coverage, the insured will be entitled to full reimbursement of the insured's litigation costs. Additionally, if the insurer offers to defend under a reservation of rights, the insured has the right to reject the defense and hire its own attorneys and control the defense. See Aguero v. First Am. Ins. Co., 927 So.2d 894 (Fla. 3d DCA 2005)("`[W]hen an insurer offers to defend under a reservation of rights, Florida law provides that the insured may, at its own election, reject the defense and retain its own attorneys without jeopardizing his right to seek indemnification from the insurer for liability'")(quoting Travelers Indem. Co. of Illinois v. Royal Oak Enters., Inc., 344 F.Supp.2d 1358, 1371 (M.D.Fla. 2004)); Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc., 864 So.2d 1126, 1129 (Fla. 2d DCA 2003)("The law is well established that when an insurer unjustifiably refuses to defend its insured, the insurer is liable to the insured for the reasonable attorney's fees and other expenses incurred in defending the action brought by the third party . . . ."); Nationwide Mut. Fire Ins. Co. v. Beville, 825 So.2d 999, 1003 (Fla. 4th DCA 2002)(explaining that when an insurer either refuses to defend or makes a reservation of rights, it violates its duty to unconditionally defend its insured and thereby transfers to the insured the power to defend).
Liberty denied coverage on the basis that BellSouth violated the notice provision of the insurance contract by not timely notifying Liberty of the lawsuit. However, an insured's violation of a notice requirement does not relieve the insurer of its contractual obligation to defend when no prejudice is shown. See Aguero v. First Am. Ins. Co., 927 So.2d 894 (Fla. 3d DCA 2005)(finding that summary judgment was improper, even if an additional insured delayed in notifying an insurer of a lawsuit filed against the additional insured, because a genuine issue of material fact existed as to whether the insurer was prejudiced by the delay); see also Nationwide Mut. Fire Ins. Co., 825 So.2d at 1004 ("[T]he failure of the carrier to offer a proper defense upon receipt of notice waives any defect in delaying notice."). Liberty had a duty to defend despite the late notice and, therefore, wrongfully refused to do so.
Liberty asserts that, while it wrongfully refused to defend, because it now accepts that duty without a reservation of rights, BellSouth has an obligation to accept its defense. In support of its argument, Liberty notes that BellSouth filed a declaratory judgment action against Liberty, seeking to enforce the insurance policy with Liberty; that BellSouth was getting what it asked for; and it cannot now complain. We disagree.
A review of BellSouth's complaint against Liberty and Church & Tower, reveals that BellSouth sued them for breach of contract and indemnification, not for specific performance. The "wherefore" clauses do not demand that Liberty comply with its contractual obligations to defend. They, instead, seek damages in the form of attorneys' fees and costs incurred in BellSouth's defense of the lawsuit filed by Trujillo's guardian and FP & L, as well as attorneys' fees and costs in the prosecution of the declaratory judgment action.
We conclude that, under the circumstances presented herein, Liberty has forfeited its right to defend BellSouth in its litigation with Trujillo and FP & L. Liberty had a duty to defend, and BellSouth's late notice did not relieve Liberty from that obligation as there was clearly no prejudice. Liberty has been defending Church & Tower in the instant lawsuit. *672 Liberty, therefore, wrongfully refused to defend instead of defending with a reservation of rights. BellSouth, therefore, was forced to assume its own defense and has done so for over a year. BellSouth's chosen attorney has engaged in discovery and an investigation of the facts, and is a highly experienced attorney in this particular field. At this stage, BellSouth would suffer material harm if forced to relinquish control of its defense to Liberty, as Liberty is also representing Church & Tower in a pending appeal against BellSouth arising out of this same lawsuit, and Liberty's liability is either $1,000,000 or $2,000,000[1] while BellSouth's potential liability is substantially higher.
Our conclusion is supported by case law from this jurisdiction. In Carrousel Concessions, Inc. v. Florida Insurance Guaranty Association, 483 So.2d 513 (Fla. 3d DCA 1986), we were faced with a situation where Carrousel, who was a defendant in a personal injury action, and whose defense was assumed by the Florida Insurance Guaranty Association (FIGA) when Carrousel's insurer became insolvent, became dissatisfied with the performance of the attorneys hired by FIGA, and hired its own attorneys. Id. at 515. FIGA refused to pay the costs and attorneys' fees for the defense, and after the trial resulted in an adverse judgment against Carrousel, FIGA refused to post an appellate bond. Carrousel sued FIGA for breach of contract for failing to provide Carrousel with an adequate defense and for failing to post the appellate bond. The trial court entered summary judgment in favor of FIGA, and Carrousel appealed.
On appeal, we reversed the summary judgment, finding that, if Carrousel established that the defense supplied by FIGA was inadequate and that it was reasonable for Carrousel to engage its own attorneys, Carrousel would be entitled to recover all reasonable costs and attorneys' fees incurred at the trial level, as well as its appellate expenses. We concluded that since FIGA breached its duty to defend by providing an inadequate defense at trial, it forfeited its right to decide whether an appeal should be pursued.
With respect to an insurer's refusal to defend, it is well established that an insurer's unjustified refusal to defend a suit against the insured relieves the insured of his contract obligation to leave the management of such suit to the insurer and justifies him in assuming the defense of the action on his own account. In such a case the insurer cannot complain about the conduct of the defense by the insured, cannot dictate to the insured how the case should be handled, and can neither object to the taking of an appeal by the insured from an unfavorable judgment rendered against him, nor complain of the insured's failure to appeal. Also, the right to intervene is lost by the insurer by its wrongful refusal to defend.
Carrousel, 483 So.2d at 517-18 (quoting Couch on Insurance 2d § 51:161 (rev. ed.1982))(footnotes omitted in Carrousel) (emphasis added).
In Carrousel, we also relied on Witt v. Universal Automobile Insurance Co., 116 S.W.2d 1095 (Tex.Civ.App.1938), which held that when an insurer wrongfully withdraws from the defense of a case, the insured has the right to refuse to allow the insurer to re-enter the case and take charge of the defense, because the insurer waived its right to defend the suit and, *673 "`having thus waived its right to defend the suit, such right was lost forever.'" Carrousel, 483 So.2d at 518 (quoting Witt, 116 S.W.2d at 1098)(alterations removed). While Liberty asserts that this statement in Carrousel, summarizing and quoting the Texas court's decision in Witt, was merely dicta, we disagree. The issue being addressed in that portion of the opinion was whether FIGA had the right to decide whether to pursue an appeal. Carrousel, 483 So.2d at 517-18. We, therefore, examined persuasive authorities to determine whether an insurer can control a case after breaching its duty to defend, and based upon Witt, which concluded that an insurer cannot re-enter and take charge of a case after it wrongfully refused to defend, we found that FIGA had forfeited its right to decide whether an appeal should be pursued after providing an inadequate defense. As FIGA was not permitted to reenter the case in Carrousel, our reliance upon Witt was clearly critical to the outcome in Carrousel, and, therefore, not dictum. See Black's Law Dictionary 1102 (8th ed.2004)(defining "obiter dictum" as a judicial comment in an opinion that is "unnecessary to the decision in the case and therefore not precedential").
We, therefore, conclude that our statement in Carrousel, that once an insurer wrongfully withdraws from the defense of a case, the insured has the right to refuse to allow the insurer to re-enter the case and take charge of it, is controlling. Thus, by reinstating Liberty's right to defend after its previous wrongful refusal to defend, the trial court departed from the dictates of the controlling case law in this district, and departed from the essential requirements of the law. See Progressive Express Ins. Co. v. Physician's Injury Care Ctr., Inc., 906 So.2d 1125, 1127 (Fla. 5th DCA 2005)(finding that a departure from the dictates of controlling case law is a departure from the essential requirements of the law).
Liberty attempts to distinguish Carrousel by arguing that it involved a failure to provide an adequate defense, rather than a refusal to provide a defense at all. Such a distinction is meritless. In Carrousel, we held that whether an insurer provides an inadequate defense or no defense at all, it breaches its duty to defend and thereby forfeits its right to control the defense. Carrousel, 483 So.2d at 517-18.
As we conclude that the trial court departed from the essential requirements of the law by allowing Liberty to select counsel and to take control of BellSouth's defense, and that BellSouth would suffer irreparable injury due to its potential liability which greatly exceeds the policy limits, we grant the petition and quash the portion of the trial court's order permitting Liberty to select counsel and to control BellSouth's defense. See Gonzalez v. Chillura, 892 So.2d 1075, 1076-77 (Fla. 2d DCA 2004)(explaining that to deny a party the counsel of its choice is a material injury without remedy on appeal).
Accordingly, the petition for writ of certiorari is granted, and that portion of the trial court's order which permits Liberty to select counsel and control BellSouth's defense, is quashed.
CORTIÑAS, J., concurs.
SCHWARTZ, Senior Judge (dissenting).
I would deny certiorari on the basis of the immutable legal principle that nothing is perfect. Having won a judgment that Liberty must provide coverage and an appropriate defense, BellSouth must accept the downside of that victory, including the fact that, under the policy, the insurer is entitled to conduct the defense itself. (Ironically, having now succeeded in this Court in its insistence upon the contrary *674 proposition that it may designate its own attorney,[2] it must now suffer the adverse consequences of that triumph: by doing so, it has breached the cooperation clause of the policy, thus providing Liberty with what is, this time, a good, sound reason to disclaim responsibility.)
NOTES
[1] There is currently a dispute between BellSouth and Liberty as to the amount of coverage.
[2] Although the issue is not squarely before us, I believe that BellSouth's suggestion at oral argument that Liberty must also pay for BellSouth's lawyer is no less than an outrageous addition of financial injury to unjustified insult (or vice versa).