[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14772
Non-Argument Calendar

_____

D. C. Docket No. 04-01170-CV-J-20-MCR

CONTINENTAL CASUALTY COMPANY,
TRANSPORTATION INSURANCE COMPANY,

Plaintiffs-Counter-
Defendants-Appellees,

TRAVELERS INDEMNITY CO.,

Plaintiff-Counter-
Defendant-Third-Party Plaintiff,

versus

CITY OF JACKSONVILLE,
DUVAL COUNTY SCHOOL BOARD,
JACKSONVILLE ELECTRIC AUTHORITY,

Defendants-Counter-
Claimants-Appellants,

CENTURY INDEMNITY COMPANY, et al.,

Defendants,

INSURANCE COMPANY OF NORTH AMERICA,

Counter-Defendant-
Appellee,

versus

DOES 1-100,

Third-Party-Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(April 22, 2008)**

Before BIRCH, DUBINA and WILSON, Circuit Judges.

PER CURIAM:

The City of Jacksonville, Duval County School Board and Jacksonville
Electric Authority (collectively, "the City") appeal the district court's grant of
summary judgment in favor of Continental Casualty Company and Transportation
Insurance Company (jointly, "Transportation") and the dismissal of their
counterclaims with prejudice. For the reasons stated below, we affirm the district
court's judgment.

## I. BACKGROUND

In May 2003, thousands of Jacksonville, Florida residents filed a state court action against the City alleging physical and emotional injuries caused by their exposure to lead, PCBs, arsenic, and other contaminants from incinerators and dump sites owned and operated by the City ("*Williams* litigation").[1] On March 2, 2004, ten months after the *Williams* litigation began, the City sent written notice to Transportation, asking Transportation to provide a defense. Transportation agreed to defend the City, paying their fair share of reasonable and necessary expenses related to the defense, subject to a complete reservation of rights. The City chose the law firm of Steel, Hector & Davis, and Transportation fully funded the City's defense, eventually paying approximately $3.9 million in attorneys' fees and costs. The City accepted the defense funded by Transportation through settlement through the *Williams* litigation, but nonetheless contended that it had the right to control the defense because Transportation tendered its defense subject to a reservation of rights.

The instant appeal is taken from an action by Transportation seeking a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, as to the scope and nature of their obligations under the relevant insurance contracts, if any, to the City with respect to the *Williams* litigation. On Transportation's first two motions for

---

[1] *Nora Williams v. City of Jacksonville*, Case No. 16-2003-CA-03263.

3

summary judgment, the district court found that (1) Transportation had satisfied its duty to defend and had complied with the requirements of Florida's Claim's Administration Statute; and (2) the City's failure to cooperate with Transportation was a material failure that substantially prejudiced Transportation. The district court initially declined to grant full summary judgment in favor of Transportation, however, because "the Court [could not] find as a matter of law that Transportation attempted in good faith to foster cooperation and that a reasonable and prudent person would not have either accepted the settlement proposed or negotiated a different settlement. These issues must be decided by a fact-finder." R.428 at 33.

Yet, after reviewing a then-recent unpublished opinion from this Court, *Philadelphia Indem. Ins. Co. v. Kohne*, 181 Fed. Appx. 888, 2006 WL 1390415 (11th Cir. 2006), and reexamining the Supreme Court of Florida's decision in *Ramos v. Northwestern Mut. Ins. Co.*, 336 So. 2d 71 (Fla. 1976), the district court re-framed the remaining issue in the declaratory action as "simply whether Transportation exercised due diligence and good faith in trying to bring about the City's cooperation as it attempted to defend the *Williams* Action." R.428 at 37. On Transportation's motion for final summary judgment, the court found that the undisputed facts demonstrated "the City's duplicity" with respect to its communications with Transportation throughout the *Williams* litigation. The

4

district court determined that Transportation had exercised due diligence and good faith in securing the City's cooperation, but that the City's actions rendered Transportation's efforts futile. The district court concluded that Transportation was therefore discharged from their duty to use due diligence and good faith in securing the City's cooperation, and it granted final summary judgment in favor of Transportation, dismissing the City's counterclaims with prejudice.[2] The City appeals.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. Summary judgment is appropriate where the pleadings, discovery materials on file, and any affidavits demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Mega Life And Health Ins. Co. v. Pieniozek*, 516 F.3d 985, 989 (11th Cir. 2008) (per curiam).

## III. DISCUSSION

The City argues that "[t]he overarching error of the [district court's] ruling is

---

[2] The City's counter-claims sought (1) the re-establishment of certain "lost" insurance policies; (2) declaratory judgment as to Transportation's liabilities under the insurance contracts; and (3) damages for Transportation's alleged breach of its duty to defend.

the failure to recognize that Insurers' [sic] prior breaches must be deemed to constitute an anticipatory breach of contract excusing compliance with the cooperation clause." Appellant Brief at 19. Specifically, the City construes Transportation's defense under a reservation of rights as a "refusal to defend," allowing the City to retain full control of the defense and entitling it to settle without Transportation's consent. Moreover, the City argues that the district court erroneously re-framed the remaining issue for trial as whether Transportation's communications with the City demonstrate its due diligence and good faith in securing the City's cooperation. The City contends that the issue is properly framed as whether Transportation had "'attempted in good faith to foster cooperation *and* [*whether*] *a reasonable and prudent person would not have either accepted the settlement proposed or negotiated a different settlement.*'" *Id.* at 30.

In response, Transportation argues that the undisputed evidence demonstrates that they provided a fully-funded defense by counsel of the City's choosing, and because the City accepted this defense notwithstanding a reservation of rights, Transportation retained the right to control the defense. Transportation also argues that despite their numerous attempts to obtain more information and become more involved in the course of the *Williams* litigation, the City consistently failed to notify Transportation of important settlement discussions

and failed to fully and honestly communicate the contents of those discussions. Transportation claims that although the City accepted their defense, it went behind Transportation's back to settle the *Williams* litigation over Transportation's repeated objection, capping the City's liability to $25 million while stipulating to a consent judgment of $75 million enforceable only against Transportation and other insurers.

We first note that this declaratory judgment action was brought on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and therefore, state law must apply to any issue not governed by the Federal Constitution, treaties, or Act of Congress. *See* 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938). The district court determined that Florida law determines Transportation's legal duties and obligations under their insurance contracts and accordingly, applied Florida law throughout the dispositions below. The parties have not objected, and we therefore examine the various claims asserted on appeal under Florida law. *See Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983) ("Because the parties did not raise any conflict of laws issue in the district court and do not raise it on appeal, under applicable conflict of laws principles the law of the forum ( [Florida] ) would govern the substantive issues due to the absence of facts justifying the application of the law

of some other jurisdiction." (internal quotation marks omitted)).

A. *Duty to Defend, Reservation of Rights, and Right to Control the Defense*

Under Florida law, "an insurer's duty to defend is separate and distinct from its duty to indemnify, and is more extensive." *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. Dist. Ct. App. 1997). Thus, "an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy." *Id.* Because under Florida law an insurer may not lawfully refuse to defend even when it suspects that coverage does not exist, "an insurer may provide a defense under a reservations [sic] of rights." *Id.* at 476–477.

An insurer's wrongful refusal to defend forfeits its corresponding right to control the defense. *See Bellsouth Telecomm., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 671–72 (Fla. Dist. Ct. App. 2006). As is well-established under Florida law, "an insurer's unjustified refusal to defend a suit against the insured relieves the insured of his contract obligation to leave the management of such suit to the insurer and justifies him in assuming the defense of the action on his own account." *Id.* at 672. Under such circumstances, "if it is later determined that the insured was entitled to coverage, the insured will be entitled to full reimbursement of the insured's litigation costs." *Id.* at 671.

A different scenario develops when an insurer provides a defense subject to

8

a reservation of rights. First, "[a]n insurer does not breach its duty to defend an insured when it provides a defense under a reservation of rights." *First American*, 695 So. 2d at 477. An insurer is entitled to tender such a defense because "the law distinguishes between the insurer's duties to defend and to pay." *Taylor v. Safeco Ins. Co.*, 361 So. 2d 743, 745 (Fla. Dist. Ct. App. 1978). Because a defense subject to a reservation of rights does not constitute a wrongful refusal to defend, an insurer retains its right to control the defense. Yet, an insured is "not obliged to surrender control of his personal defense to an insurer which disclaimed responsibility for any judgment within policy limits that might result from the litigation." *Id.* Therefore, "if the insurer offers to defend under a reservation of rights, the insured has the right to reject the defense and hire its own attorneys and control the defense." *Church & Tower*, 930 So. 2d at 671. As explained in *Taylor*:

> Just as the insurer is not required to abandon its contest of a duty to pay as a condition of fulfilling an assumed or admitted duty to defend, the insured is not required to abandon control of his own defense as the price of preserving his claim, disputed by the insurer, that the insurer pay any judgment. The law respects, but does not require, such agreements.

*Taylor*, 361 So. 2d at 745. While an insurer must defend its insured, and may tender its defense subject to a reservation of rights, Florida law does not require an insured to accept such a defense.

The undisputed facts demonstrate that when the City finally notified

9

Transportation about the *Williams* litigation—ten months after the complaint was filed—Transportation responded by offering to defend the City subject to a full reservation of rights, allowed the City to select its counsel, and paid all attorneys' fees and costs associated with defending the *Williams* litigation. Thus, the district court correctly found that Transportation fulfilled its legal duty to defend. By accepting and not rejecting Transportation's fully-funded defense, the City agreed to leave control of the defense in Transportation's hands. Consequently, the City was required to cooperate with Transportation throughout the *Williams* litigation.

B. *Breach of Duty to Cooperate*

The relevant insurance contracts between Transportation and the City provided the following cooperation clause:

> The insured shall cooperate with the company, and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. *The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense* other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident.

R.428 at 4 (quoting R.112, Exh. 32 at ¶ 12) (emphasis added). Given that the City first notified Transportation of the *Williams* litigation ten months after the suit was filed, Transportation tendered a defense subject to a reservation of rights because it had reason to believe that the City may have breached the cooperation clause of the

10

insurance contract.

Florida law has long established that an insurer may deny insurance coverage and any payment of damages to the victim of an insured's tort "where the insurer has exercised diligence and good faith in seeking to bring about the cooperation of the insured, and where the insurer has in good faith complied with the terms and conditions of the policy." *Ramos v. Nw. Mut. Ins. Co.*, 336 So. 2d 71, 75 & n.2 (Fla.1976) (citing *American Fire and Cas. Co. v. Vliet*, 4 So. 2d 862 (Fla. 1941); *American Fire and Cas. Co. v. Collura*, 163 So. 2d 784 (Fla. Dist. Ct. App. 1964); *Bordettsky v. Hertz Corp.*, 171 So. 2d 174 (Fla. Dist. Ct. App. 1965)). "Not every failure to cooperate will release the insurance company. Only that failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay." *Id.* While the question of "whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, . . . under some circumstances, particularly where the facts are admitted, it may well be a question of law." *Id.*

As properly observed by the district court, the City does not so much argue that it did not fail to cooperate, or even that its failure to cooperate is neither material nor substantially prejudicial, but that its failure to cooperate does not

11

dissolve Transportation's duty to pay because Transportation's "bad faith" in settling the *Williams* litigation constituted a breach of its implied duty of good faith in contract under Florida law. In essence, the City argues that Transportation's duty of good faith to foster cooperation embodies "a duty of good faith in 'negotiating settlement,'" and because Transportation breached its good faith duty to settle, the City was entitled to settle without Transportation's consent. Appellant Brief at 31–41.

Florida law provides an insured with a cause of action against its insurer for damages caused by the insurer's "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests." Fla. Stat. § 624.155(1)(b)1. (1987). On a certified question from this Court, the Supreme Court of Florida clarified the issue of "when a first-person statutory cause of action for bad faith under section 624.155 arises." *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) (internal quotation marks omitted). Specifically, we asked:
"Does an insured's claim against an uninsured motorist carrier under section 624.155(1)(b)1., . . . for allegedly failing to settle the uninsured motorist claim in good faith accrue before the conclusion of the underlying litigation for the

12

contractual uninsured motorist insurance benefits?" *Id.* at 1290. Answering that question in the negative, the Supreme Court of Florida explained

> If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim. *Thus, an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue.*

*Id.* at 1291 (emphasis added). As applied to this case, the underlying declaratory judgment action as to Transportation's contractual obligations to the City must be resolved in the City's favor before the City's cause of action for bad faith in settlement negotiations may accrue against Transportation. Thus, the district court correctly focused on whether, on the basis of the undisputed facts before it, the City's alleged breach of the cooperation clause released Transportation from its obligations under the insurance contract. The City's continued attempts to avoid the issue of its cooperation by framing the issue as whether Transportation exercised bad faith in settlement negotiations fail here, as they did below.

As explained by the Supreme Court of Florida, "to constitute the breach of a policy, the lack of cooperation must be material and the insurance company must show that it was substantially prejudiced in the particular case by failure to cooperate." *Ramos*, 336 So. 2d at 75. "[W]hile an insured is free to enter into a reasonable settlement when its insurer has wrongfully refused to provide it with a

13

defense to a suit, . . . we find that the insured is not similarly free to independently engage in such settlements where, as here, the insurer had not declined a defense to suit." *First American*, 695 So. 2d at 477. Thus, "the insured's failure to comply with the relevant policy provisions [cooperation clause] relieved the insurer of its obligations under the policy." *Id.*

Applying *Ramos*, the district court found on the first two motions for summary judgment that the City breached its duty to cooperate. Having found that Transportation retained control of the *Williams* litigation by satisfying its duty to defend, the district court rightly determined that the City materially breached the express language in the cooperation clause by settling the case without Transportation's consent and over Transportation's express objections.

The court was also correct in finding that "[t]here is no doubt that the settlement reached – i.e., a $75 million consent judgment including the assignment of all the City's rights against the Insurers to the Williams Plaintiffs – is substantially prejudicial to the Insurers." R.179 at 20. This is especially so considering the City's numerous failures to inform Transportation of the schedule for important settlement discussions or provide full information of the details of those discussions. The many private negotiations between the City and the *Williams* plaintiffs, prevented Transportation from being able to provide input at

14

critical stages of the negotiation process.[3]

As for the remaining issue under the *Ramos* test—whether the insurer exercised good faith and due diligence in securing the insured's cooperation—we also agree with the district court that the undisputed facts demonstrated "the City's duplicity" throughout the settlement process and that the City's deception rendered Transportation's efforts to secure the City's cooperation futile. As a panel of this Court has discussed, under *First American*, an insurer exercises due diligence and good faith in securing cooperation when it makes efforts to communicate with the insured and specifically instructs the insured to notify it of any developments in the underlying matter. *See Kohne II*, 181 Fed. Appx. at 982. The court in *First American* held that under the undisputed facts, the insured's breach of the cooperation clause released the insurer's obligations under the policies as a matter of law. 695 So. 2d at 477. Although *First American* did not explicitly provide a standard by which to evaluate due diligence and good faith in securing cooperation, the court was indeed influenced by the fact that "FATCOF [the insured] did not notify National [the insurer] of this lawsuit or seek its permission to enter into the consent judgment." *Id.* at 476. The insured failed to communicate with its insurer despite the insurer's written request for more information. *Id.*

---

[3] The full, detailed history of the City's conduct throughout the *Williams* settlement is chronicled in the district court's opinion. *See* R.420 at 5–28.

The undisputed evidence here reveals that on numerous occasions, Transportation sent written requests, by mail and email, for information on the status of the *Williams* settlement. Transportation attended four of the five initial mediation sessions, but rejected the first settlement offer from the *Williams* plaintiffs because it did not have sufficient information to adequately evaluate it. In one letter to the City after a mediation session, Transportation reminded the City that "'[d]uring the mediation, the City agreed that they would discuss any potential offer with Transportation Insurance Company [ ] prior to making such an offer an allow [Transportation] to voice any objection it has.'" R.420 at 7 (quoting Declaration of Richard Pratt, Ex. 18) (alterations in original). Transportation repeated its position on at least 8 or 9 occasions. Thereafter, the City engaged in numerous settlement discussions with the *Williams* plaintiffs without Transportation's input or knowledge. *See* R. 420 at 8–9. Cindy Lacquidara, Chief Deputy General Counsel at the Office of General Counsel for the City, admitted that "'the City knew that Transportation wanted to be involved in all of the settlement negotiations.'" *Id.* at 7 (quoting Declaration of Richard Pratt, Ex. 11). Despite the City's knowledge, the City, through Ms. Lacquidara, continued settlement discussions without including Transportation, "'declin[ing] to accept [Transportation's] insistence upon approving any decision to settle so long as its

16

reservation of rights is maintained.'" *Id.* at 13 (quoting Declaration of Richard Pratt, Ex. 33) (second alteration in original).

Under the undisputed facts about the *Williams* settlement, the district court did not err in concluding that, as a matter of law, Transportation exercised due diligence and good faith in securing the City's cooperation and that the City's dishonesty rendered Transportation's attempts to secure its cooperation futile.

IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Transportation and dismissal of the City's counterclaims with prejudice.  The City's material breach of the cooperation clause was substantially prejudicial to Transportation, which satisfied their duty to defend.  Although Transportation exercised due diligence and good faith in securing the City's cooperation, the City's conduct rendered Transportation's efforts futile.  We affirm the district court's conclusion that the City's resultant breach of the cooperation clause releases Transportation of its obligations to the City under the relevant insurance contracts, as a matter of law.

AFFIRMED.

17