**ULTRA COACHBUILDERS, INC. Plaintiff,**

v.

**GENERAL SECURITY INSURANCE COMPANY, Defendant.**

No. 02 Civ. 675(LLS).

United States District Court, S.D. New York.

Oct. 29, 2002.

Weg and Myers, New York City, Joshua L. Mallin, of counsel, Gauntlett & Associates, Irvine, CA, David A. Gauntlett, Eric R. Little, of counsel, for Plaintiff.

Melito & Adolfsen, New York City, John H. Somoza, of counsel, for Defendant.

### Opinion and Order

STANTON, District Judge.

In an opinion issued July 15, 2002, this Court found that defendant General Security Insurance Company ("General Security") owed plaintiff Ultra Coachbuilders, Inc. ("Ultra"), the duty of defending Ultra in an action brought by the Ford Motor Company in a federal district court in California ("the *Ford* action").[1] Ultra now moves for partial summary judgment against General Security, awarding Ultra $149,658.07 in attorneys' fees and other costs it had incurred defending the *Ford* action, with pre-judgment interest thereon at the annual rate of 10 percent, from the date of each invoice until the date of judgment.

The relevant facts are not disputed. Ultra tendered the defense of the *Ford* action to General Security in April or early May 2000, and General Security declined the tender by letter dated July 24, 2000. (West Decl. ¶¶ 8, 9.)

---

1. The action, filed on April 21, 2000, is styled: *Ford Motor Company v. Ultra Coachbuilders, Inc.,* C.D. Cal., No. EDCV–00–00243–VAP (RCx).

On or about May 16, 2000, Ultra retained the California law firm of Knobbe, Martens, Olson & Bear, LLP ("Knobbe") to defend it in the *Ford* action. (Def.' s Statement of Material Facts ("DSOMF") ¶ 7.) The *Ford* action was stayed at the end of December 2000 when Ultra filed a petition in bankruptcy. (DSOMF ¶¶ 8, 9.) Knobbe's invoices total $149,658.07, toward which Ultra made three payments totaling $60,662.68. (DSOMF ¶¶ 10, 18.)

On June 15, 2001, as part of its bankruptcy proceedings, Ultra entered into a stipulation with Knobbe, assigning to Knobbe its "right, title and interest in and to the Insurance Policies, including but not limited to, any and all rights to recoveries for defense fees and costs incurred." (Somoza Aff., Ex. 1, ¶ G.) The assignment provides that any recovery under the General Security policy on claims asserted by Knobbe would be applied:

a. First, to all fees and costs incurred by Knobbe in pursuing such claim which shall include cost of coverage counsel as well as cost of bankruptcy counsel to effect this assignment;

b. Second, to Knobbe on account of fees and costs incurred by the debtor which remain due and owing;

c. Third, any excess shall be paid to the debtor care of its counsel of record herein for distribution to creditors consistent with the plan and as approved by this [bankruptcy] court.

*Id.*

As assignee of Ultra, Knobbe retained the law firm of Gauntlett & Associates for the purpose of securing and obtaining from General Security the policy benefits of defense of the *Ford* action. (Decl. Tarzi ¶ 2.)

In opposition to the instant motion, General Security argues that Ultra is not entitled to recover pre-judgment interest on still-unpaid defense costs, because Ultra has enjoyed the use of the money it would have paid for those costs. For the costs that Ultra has paid, General Security argues that pre-judgment interest should run from the date of payment, rather than from the date of invoice.

General Security also claims certain defense costs should not be recoverable because they were unreasonable or unnecessary. It objects to paying for late fees assessed for unpaid defense costs, for the assertion of counterclaims on Ultra's behalf, and for paralegal work and computer research. It also claims that Knobbe's excessive billing rates and duplicative work warrant a 50% reduction in attorneys' fees.

*Discussion*

Generally, the insured, as the party seeking relief, carries the burden of proving the amount of costs incurred in defense of the action. By contrast, in the exceptional case, wherein the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the . . . expenses, which are then presumed to be necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary.

*State of California v. Pacific Indemnity Co.*, 63 Cal.App.4th 1535, 1548–49, 75 Cal. Rptr.2d 69 (1998) (internal quotations and citation omitted, ellipsis in the original). Here, General Security has not carried its burden of proving that the claimed attorneys' fees and costs were unreasonable or unnecessary for Ultra's defense. Ultra is entitled to recover its defense costs, as well as pre-judgment interest on those costs running from the date of each invoice, regardless of its present delinquency in payments.

## A.

Although the time in which Knobbe defended the *Ford* suit was only about eight months (May through December 2000), the attorneys performed a significant amount of work which was essential to the defense of the action. The Knobbe firm successfully opposed Ford's motion for a preliminary injunction, and defended Ford's appeal from that order to the Ninth Circuit, which summarily affirmed. Knobbe also filed and drafted an answer interposing three affirmative counterclaims and opposed Ford's motion to dismiss those counterclaims.

The defense required, not only the usual deposition and interrogatory discovery practice, but vigorous and prompt opposition to Ford's motion for a preliminary injunction which (according to the uncontradicted Zadra–Symes declaration in support of plaintiff's reply, ¶ 10),

> ... would have required Ultra to strip Ford marks from the motors, windows, hubcaps, outer body, grille, trunk, dashboard, floor mats, steering column and carpet of each Ultra limousine.

The costs of complying with that would likely have required Ultra to lay off employees or permanently close its business (Id.¶ 11).

The issues involved the degree of trademark protection to be given nine items: "Ford," "Lincoln," the Ford "script in oval" logo, the Lincoln "star" logo, "Town Car," "Navigator," "Excursion," the front grille on Lincoln cars, and "QVM."

Ford's motion had been filed before Knobbe was retained, so time was short. Two days before the scheduled hearing date, Knobbe obtained a 17–day adjournment, and filed its opposition papers a week later, and its response to Ford's reply four days before the hearing. Any litigator knows this required hard work and long hours. The motion was argued on June 5, 2000.

On July 11 the court rendered its decision, ruling in favor of Ultra on all points save two. It held that Ford's factual presentation and legal authorities were insufficient to show the necessary probability that Ford would succeed on the issue of likelihood of confusion, or that the Lincoln grille or "QVM" were entitled to trademark protection. The decision was adverse to Ultra only in requiring it to cease placing "Ultra" so close to the "Navigator" badge as to appear an "Ultra Navigator" badge, and to refrain from advertising itself as the world's largest manufacturer of Navigators and Excursions. *See Ford Motor Co. v. Ultra Coachbuilders, Inc.*, 57 U.S.P.Q.2d 1356, 2000 WL 33256536 (C.D.Cal.2000). Ford appealed.

The papers on appeal were submitted on September 11, and the Ninth Circuit unanimously affirmed by unpublished memorandum on September 26, 2000. 238 F.3d 428, 2000 WL 1411199 (9th Cir.2000) (table).

Thus, the services were rendered under exigent circumstances, involved the factual and legal complexities of trademark cases, were performed with skill and dispatch, and resulted in a substantial victory, successfully defended on appeal and of great importance to the client.

■ Billings for all partners averaged $324.06 per hour, and billings for all associates averaged $204.60 per hour. (Decl. Tarzi ¶¶ 11, 12.) Although General Security argues that the retention of a top-tier intellectual property law firm was extravagant, the rates charged by Knobbe were below the median rates charged by intellectual property partners and associates [2]

---

**2.** According to the AIPLA report, the median    rate for California intellectual property part-

in California, according to a survey of private practice law firms conducted by the American Intellectual Property Law Association. (Decl. Tarzi Ex. 16, "AIPLA Report of Economic Survey 2001, Table 16b: Average Hourly Billing Rate by Type of Practice and Location of Primary Place of Work.") The mix of partner and associate hours expended[3] in defense of the *Ford* case actually averaged $300.65 per hour, which lies closer to the median for all private intellectual property practitioners ($275) than to the 75th percentile ($350) rates. Thus, Knobbe's rates were not excessive compared to other California intellectual property lawyers. General Security has not particularized any specific excessive charge or expenditure of time.

Under the circumstances Knobbe's rates and time charges were entirely reasonable.

## B.

■ Ultra is entitled to prejudgment interest on recoverable costs, running from the date of each invoice. California Civil Code section 3287 provides:

§ 3287. Interest on damages; right to recover; time from which interest runs.

(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right of recovery which is vested in him on a particular day, is entitled also to recover interest thereon from that day. . . .

Cal. Civ.Code § 3287(a) (West 2000).

The interest rate in this case is 10 percent per year. California Civil Code section 3289 provides:

§ 3289. Rate of interest chargeable after breach of contract.

(a) Any legal rate of interest stipulated by contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.

(b) If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.

Cal. Civ.Code § 3289 (West 2000). Knobbe's retainer agreement with Ultra also provides that Knobbe will assess a "late fee" at a rate of 10% per annum on sums left unpaid 30 days after each invoice. (Decl. Zadra–Symes Exs. 2–8.)

General Security argues that Ultra is not entitled to pre-judgment interest because (1) interest on claims against a bankrupt (like Knobbe's against Ultra) stops running when the petition in bankruptcy is filed, and (2) since Ultra has not fully paid for its defense, to the extent that it has not been deprived of the use of funds, it does not need interest to make it whole.

The short answer to the first point is that this claim is by Ultra against its insurer: there is no such bar on claims by, rather than against, the bankrupt.

As to the second point, the statute (§ 3289(a), *supra* ) does not require that the claimant be out-of-pocket in order to recover interest on the unpaid debt. (Indeed, here Knobbe, the ultimate creditor of General Security, has lost the interest upon its unpaid fees.)

The pre-judgment interest will run from the date of each invoice. *See CoPart v. Travelers Indemnity Co.*, 1999 WL 977948, at *8 ("Interest began to accrue on the date CoPart incurred its obligations (i.e., the billing dates)"); *Overholtzer v. North-*

---

ners was $350 per hour; and the median rate for associates was $235 per hour.

3. Using the hours and rates given in the Tarzi declaration, paragraphs 11 and 12.

*ern Counties Title Ins. Co.,* 116 Cal.App.2d 113, 127, 253 P.2d 116 (1953) ("Obviously, the amount [of litigation expenses] thereof became fixed, for interest purposes, when liability therefore was incurred by the [plaintiffs] ).

## C.

■ With respect to Knobbe's charges for "late fees," it would be unreasonable to permit Ultra a double recovery of interest on unpaid fees and costs. The 10% prejudgment interest on all unpaid defense costs fully compensates Ultra for the delay in payment of defense costs. The late fees referred to in the Knobbe retainer agreement, regarding a 10% "late fee" on a portion of the same costs, therefore are disallowed as duplicative.[4]

## D.

General Security also argues that the fees incurred in asserting (and opposing a motion to dismiss) three counterclaims, which it contends are not covered by the policy, are not recoverable defense costs. (Def.'s Mem. of Law at 9.)

■ In fact the counterclaims, alleging unfair competition and interference with competitive advantage, were used to argue (albeit unsuccessfully) that the injunction application was barred by the doctrine of unclean hands, see *Ford Motor Co. v. Ultra Coachbuilders, Inc.,* 57 U.S.P.Q.2d 1356, 2000 WL 33256536, at \*10 (C.D.Cal. 2000), and were thus "inextricably intertwined with the defense of [defendant's] claims and necessary to the defense of the

litigation as a strategic matter." *Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.,* 766 F.Supp. 324 (E.D.Pa.1991).

## E.

General Security has not shown that the costs of clerical file work billed by paralegals and document specialists, or billings for computer legal research, were unreasonable or unnecessary to the defense of the *Ford* action. On the contrary, the billings show that Knobbe economized by using less expensive labor for clerical work and by using time-saving computer research. *See e.g. Haroco v. American Nat. Bank & Trust,* 38 F.3d 1429, 1440 (7th Cir.1994) (Computer research costs "are indeed to be considered attorney's fees. The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching.")

## CONCLUSION

Ultra is entitled to partial summary judgment awarding it $145,667.70[5] for the fees and costs incurred in the *Ford* action, together with pre-judgment interest on those fees and costs, at 10% per annum, from the date of each invoice until the date of the judgment.

So ordered.

---

**4.** While the retainer agreement serves to confirm by contract the appropriateness of the 10% statutory interest rate, any argument that its "late charges" should be incorporated into the fee on which the California statute would add an extra 10% interest would fail. Not only would such an interest-upon-interest cumulation be excessive; it would also represent overreaching by the attorney for lack of

any disclosure, in the retainer agreement, of such a proposed consequence by combining the late charges and the California statute.

**5.** The total costs submitted, $149,658.07 (Decl. Tarzi ¶ 4), minus the total late fees of $3,990.37 assessed in Knobbe's July through January invoices.