The **EPISCOPAL CHURCH IN SOUTH CAROLINA, Plaintiff,**

v.

**CHURCH INSURANCE COMPANY OF VERMONT and The Church Insurance Company, Defendants.**

**Case No. 2:13–cv–02475–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

Signed Sept. 22, 2014.

Thomas S. Tisdale, Jr., Jason Severin Smith, Hellman Yates and Tisdale, Charleston, SC, for Plaintiff.

Peter Harris Dworjanyn, Collins and Lacy, Columbia, SC, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court upon Plaintiff The Episcopal Church in South Carolina's ("Plaintiff" or "TEC–SC") Motion for Summary Judgment on Supplemental Complaint ("Second Motion for Summary Judgment") (ECF No. 51). For the reasons that follow, the Court grants in part and denies in part Plaintiff's Second Motion for Summary Judgment.

## BACKGROUND

This case arises out of a state court action pending in the Court of Common Pleas for the First Judicial Circuit in Dorchester County, South Carolina, Case No. 2013–CP–18–00013 ("Underlying Action"). On March 5, 2013, the Underlying Action was filed by The Protestant Episcopal Church in the Diocese of South Carolina along with multiple break-away churches (collectively, "the Diocese") against The Episcopal Church a/k/a The Protestant Episcopal Church in the United States of America ("TEC") and Plaintiff TEC–SC.[1]

The Underlying Action arises from a purported doctrinal dispute between the Diocese, TEC, and Plaintiff TEC–SC. Although the Diocese disassociated from TEC, the Diocese continued to use the same intellectual, real, and personal property it had used prior to the split. Plaintiff and TEC also continued to use the same intellectual property, namely trade names, trademarks, services, and emblems. In order to clarify the ownership of the real, personal, and intellectual property, the Diocese filed the Underlying Action seeking a declaration from the state

court that the Diocese's existence and its continued use of the disputed property were proper. The Diocese also sought an order enjoining Plaintiff and TEC from their continued use of the same property.

Effective as of January 1, 2013, TEC–SC has been insured by Policy No. VPP0012879 ("Policy"), which was issued by Defendant Church Insurance Company of Vermont ("CIC–VT"). In addition to other types of coverage, the Policy provides Commercial Liability Coverage, which specifically provides coverage for "Advertising Injury Liability" under Coverage P. The Policy further provides that CIC–VT has "the right and duty to defend a suit seeking **damages** which may be covered under the Commercial Liability Coverage. [CIC–VT] may make investigations and settle claims or suits [CIC–VT] decide[s] are appropriate." Commercial Liability Coverage 7, ECF 1–1 at 77 of 120. The Policy further provides that if CIC–VT defends a suit, it will pay, among other expenses, the "costs taxed to the **insured**" and the "expenses incurred by [CIC–VT]." *Id.* Under the section of the Commercial Liability Coverage titled "What Must Be Done In Case Of Loss," the Policy provides that an "**insured** must not make payments or assume obligations or other costs except at the **insured's** own cost," and that "[i]f a claim is made or suit is brought, the **insured** must: promptly send to [CIC–VT] copies of all legal papers, demands, and notices," and assist CIC–VT at its request. *Id.* at 11–12.

In August 2013, TEC–SC requested that CIC–VT defend and indemnify it in the Underlying Action. However, by letter dated August 29, 2013, CIC–VT denied coverage on numerous grounds, including

---

1. Plaintiff TEC–SC is recognized by The Protestant Episcopal Church in the United States as the Protestant Episcopal Diocese of South Carolina. However, Plaintiff is doing business under the name TEC–SC for the purpose of complying with a temporary injunction ordered by the state court.

that the claims in the Underlying Action were not covered by the Policy. On September 11, 2013, TEC–SC filed the instant action against CIC–VT.[2] Plaintiff's Complaint alleges three causes of action against the Defendants: (1) breach of contract; (2) insurance bad faith; and (3) declaratory judgment that Defendants have a duty to defend and indemnify TEC–SC in the Underlying Action.

CIC–VT filed a Motion to Dismiss all claims. Plaintiff responded by filing its First Motion for Summary Judgment as to all claims. On January 6, 2014, 993 F.Supp.2d 581 (D.S.C.2014), the Court denied CIC–VT's Motion to Dismiss and granted in part and denied in part Plaintiff's First Motion for Summary Judgment. Specifically, the Court declared that CIC–VT has a duty to defend Plaintiff in the Underlying Action, granted summary judgment in favor of Plaintiff on its breach-of-contract claim against CIC–VT, and denied summary judgment on Plaintiff's bad-faith claim. On March 4, 2014, the Court denied CIC–VT's Motion for Reconsideration.

On February 28, 2014, while its Motion for Reconsideration was still pending, CIC–VT sent Plaintiff a reservation of rights letter, providing in part:

> The defense that the Company will afford to your clients is being provided subject to a complete reservation of the Company's rights to disclaim coverage and to withdraw from the defense in the event that Judge Duffy's Order is reversed, either via reconsideration or appeal, or based upon any other valid reason that may come to light. In that connection, we will advise you, shortly, of the name, address, and telephone number of the firm we have appointed to defend the action. It must be understood that the Company has no obligation to, and will not, pay for the prosecution of TEC or TEC–SC's counterclaims that have been asserted in that action. Furthermore, the Company's obligation to pay for TEC's and TEC–SC's defense in the action is limited to the reasonable costs of defending the action from the date of their first tender of the defense to the Company.

CIC–VT Ltr. 2, ECF 51–2.

On March 27, 2014, Plaintiff filed a Motion for Leave to File a Supplemental Complaint. Following briefing from the parties, the Court granted Plaintiff's Motion for Leave on June 3, 2014. On June 8, 2014, Plaintiff filed its Supplemental Complaint, in which it alleges the following causes of action: (1) a claim for breach of contract; (2) a claim for insurance bad faith for refusing to pay benefits and to honor obligations due under the insurance contract; and (3) a claim for a declaratory judgment from the Court declaring that CIC–VT does not have a right to select counsel for Plaintiff in the Underlying Action, that CIC–VT's duty to defend includes reimbursement of all costs incurred by Plaintiff in the Underlying Action, and that CIC–VT's acts prior to and during this litigation constitute ongoing bad faith.

On July 7, 2014, Plaintiff filed the instant Motion for Summary Judgment on the Supplemental Complaint. CIC–VT filed its Response on July 24, 2014, and Plaintiff filed a Reply on August 4, 2014. The Motion is ripe for consideration.

## STANDARD OF REVIEW

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact."

---

**2.** The Complaint also alleged claims against The Church Insurance Company, but the Court dismissed those claims with prejudice. *See* Jan. 6, 2014 Order, ECF No. 22.

Fed.R.Civ.P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### JURISDICTION

This Court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000.

### ANALYSIS

### I. General Principles of South Carolina Contract Law

 Because this action falls under the diversity jurisdiction granted to the federal courts by 28 U.S.C. § 1332, the Court looks to the law of South Carolina to determine the standards by which to evaluate the contract. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the South Carolina Supreme Court has not addressed a particular legal issue raised in this case, this Court must predict how that court would rule if presented with the issue. *Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 369 (4th Cir.2005). In making that prediction, the Court will "consider lower court opinions in South Carolina, the teachings of treatises, and the practices of other states." *Id.* (internal quotation marks omitted).

 Under South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 514 S.E.2d 327, 330 (1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.* The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id.* "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phx. Mut. Life Ins. Co.*, 266 S.C. 584, 225 S.E.2d 344, 348 (1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 493 S.E.2d 875, 878 (S.C.Ct.App.1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Poston v. Nat'l Fid. Life Ins. Co.*, 303 S.C. 182, 399 S.E.2d 770, 772 (1990).

 An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *S.C. Ins. Co. v. White*, 301 S.C. 133, 390 S.E.2d 471, 474

(S.C.Ct.App.1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *M & M Corp. of S.C. v. Auto–Owners Ins. Co.*, 390 S.C. 255, 701 S.E.2d 33, 35 (2010); *Owners Ins. Co. v. Clayton*, 364 S.C. 555, 614 S.E.2d 611, 614 (2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 344 S.C. 525, 544 S.E.2d 848, 850 (S.C.Ct.App.2001).

## II. Plaintiff TEC–SC's Motion for Summary Judgment on the Supplemental Complaint

In its Second Motion for Summary Judgment, Plaintiff asks the Court to declare: (1) that CIC–VT does not have a right to select counsel for the Plaintiff in the underlying suit; (2) that CIC–VT's duty to defend includes a duty to reimburse all reasonable costs incurred by the Plaintiff related to all claims and counterclaims in the suit and to pay all such costs going forward in the suit; and (3) that CIC–VT's acts prior to and during this litigation constitute ongoing bad faith. The Court will address each claim for relief *seriatim.*

### A. Right to Select Counsel

██ Plaintiff argues that CIC–VT does not have a right to select counsel to represent Plaintiff in the Underlying Action. In support of its argument, Plaintiff first relies on the language of the Commercial Liability Coverage, which, unlike two other coverage sections of the multi-part Policy, does not include a provision regarding selection of counsel. Second, Plaintiff maintains that CIC–VT waived any implied right to select counsel when it breached the insurance contract by refusing its duty to defend. According to Plaintiff, it would be prejudicial to replace its selected counsel, who has represented Plaintiff for well over a year in the Underlying Action. Finally, Plaintiff contends that CIC–VT has several conflicts of interest that preclude it from selecting counsel.[3] For all of these reasons, Plaintiff asks the Court to declare that CIC–VT does not have the right to select counsel for Plaintiff in the Underlying Action.

CIC–VT responds that it does have the right to select counsel for Plaintiff. According to CIC–VT, the right to defend necessarily includes the right to control the insured's defense and to select defense counsel, and the fact that the other coverage sections in the Policy mention the right to select counsel does not change this universally accepted general principle. CIC–VT further contends that a reservation of rights does not deprive an insurer of its right to select defense counsel. In response to Plaintiff's arguments regarding conflicts of interest, CIC–VT argues that Plaintiff's current counsel is so intertwined with Plaintiff as to almost be a party to the Underlying Action and that "it is patently reasonable, if not mandatory,"

---

**3.** These conflicts include the expansive reservation of rights letter; the fact that until April 2014, CIC–VT was represented by a law firm that also contemporaneously represented one of the plaintiffs in the Underlying Action; the fact that because CIC–VT contends that it will not have to indemnify Plaintiff if there is a finding of intentional or willful trademark infringement, CIC–VT's interest would be promoted by such a finding, to Plaintiff's detriment; and the fact that CIC–VT is incentivized to spend as little as possible on the defense because its duty to indemnify is capped, especially where the potential liability exposure to Plaintiff far exceeds the $1,000,000 policy limit.

for CIC–VT to retain independent counsel for Plaintiff. CIC–VT's Resp. 10, ECF No. 56. Finally, CIC–VT alleges that Plaintiff completely rejected its offer of counsel and thus waived its right to be reimbursed for attorney's fees subsequent to the April 4, 2014 offer of counsel.

In its Reply, Plaintiff disputes CIC–VT's argument that a "universal right" of an insurer to control defense activities and select defense counsel overrides the rules of insurance-contract construction. In this case, there is no language in the operative coverage that gives CIC–VT the right to select counsel. Plaintiff further argues that even if such an implied universal right to control exists, CIC–VT's decision to decline its duty to defend comes with the consequence of losing the initial control the Policy may have provided. With respect to Plaintiff's chosen counsel, Plaintiff retained him based on his experience and reputation in the legal community, as well as his understanding of the history, structure, and governance of The Episcopal Church and his intimate familiarity with the facts and circumstances of the complex dispute in the Underlying Action. Plaintiff argues that it would be substantially prejudiced if its selected counsel were removed at this advanced stage in the Underlying Action. Finally, Plaintiff disputes CIC–VT's claim that Plaintiff rejected the offer of counsel; instead, Plaintiff maintains that the proposed replacement counsel delayed a first scheduled meeting in Charleston and ultimately never rescheduled the meeting. Accordingly, Plaintiff requests a declaration that it may select its own counsel in the Underlying Action.

The Court is not persuaded by Plaintiff's argument that the Policy language does not provide CIC–VT with the right to select counsel. The Commercial Liability Coverage provides that CIC–VT has "the right and the duty to defend a suit seeking **damages** which may be covered under the Commercial Liability Coverage." Commercial Liability Coverage 7. South Carolina courts have found that where a policy provides an insurer with the right and duty to defend, the insurer has "the right and the duty *to control the defense* until such time as it [i]s determined that it ha[s] no liability insurance coverage." *Allstate Ins. Co. v. Wilson,* 259 S.C. 586, 193 S.E.2d 527, 530 (1972) (emphasis added); *see also Twin City Fire Ins.,* 433 F.3d at 372–73 (explaining that insurers, by attempting to defend under a reservation of rights, "adhered to settled principles under South Carolina law regarding their right and duty to defend by providing counsel . . . to represent the defendants for all claims filed against them"). The Court does not agree with Plaintiff that the absence of explicit language providing that CIC–VT will select defense counsel, when such provisions can be found in two other coverage sections of the Policy, means that CIC–VT does not have such a right under the Commercial Liability Coverage. Without the ability to select defense counsel and control the defense, it is unclear what "right" CIC–VT would have under the Policy. Instead, the Court finds that pursuant to the unambiguous language of the Commercial Liability Coverage, CIC–VT has the right to defend Plaintiff, and that, under established South Carolina law, that right includes the right to control the defense and select defense counsel.

■ Having found that the Policy gives CIC–VT the right to select defense counsel and control the defense, the Court now turns to the question of whether CIC–VT lost this right when it breached the contract and refused to defend Plaintiff. Neither Party has cited, and the Court has not found, any case from the South Carolina Supreme Court that addresses the question of whether an insurer retains the right

to control the defense after it has refused to defend the insured in breach of the insurance contract. Accordingly, the Court will consider treatises as well as decisions from other courts in order to predict what the South Carolina Supreme Court likely would hold if presented with this issue. *Twin City Fire Ins. Co.*, 433 F.3d at 369.

Treatises on insurance law generally find that an unjustified refusal by an insurer to defend an insured results in the insurer's loss of the ability to control the defense and select defense counsel. *See* 49 A.L.R.2d 694, at § 18 (Originally published in 1956) ("[A]n insurer's unjustified refusal to defend a suit against the insured relieves the insured of his contract obligation to leave the management of such suit to the insurer and justifies him in assuming the defense of the action on his own account."); 1 Insurance Claims & Disputes § 4:38 (6th ed.) (identifying at least "six practical disadvantages that may result from an insurer's unjustified refusal to defend," including "the insurer losing its right to select the defense counsel" and to control the defense); 14 Couch on Insurance 3d §. 202:7 ("[A]n insurer's unjustified refusal to defend a suit against the insured relieves the insured of the contract obligation to leave the management of such suit to the insurer, and justifies the insured in assuming the defense of the action on his or her own account."); *id.* (explaining that "where insurer breaches its contract by refusing to defend, and the insured then retains counsel to protect himself or herself, the insurer cannot enter into the case without the insured's permission, cannot object to the insured's handling of the case, cannot intervene in the case, and is not entitled to notice of the insured's trial strategy, and has no right to notice of pleadings filed in the underlying action") (footnotes excluded); 3–17 New Appleman on Insurance Law Library Ed.

§ 17.07 ("When an insurer refuses to defend, it forfeits its right to control the defense strategy in the underlying action.... Inherent in the fact that an insurer cannot control the insured's defense if it breaches its duty to defend is that the breaching insurer cannot avoid reimbursing the insured for all reasonable and necessary defense costs by challenging the manner in which the insured defended the underlying action.").

Moreover, it seems that the majority of jurisdictions that have considered this issue have concluded that once the insurer unjustifiably refuses to defend its insured, the insurer loses its right to control the defense and select defense counsel. *See, e.g., Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., Inc.*, 304 F.3d 804, 806 (8th Cir.2002) (applying Missouri law) ("When an insurance company refuses to defend its insured, the insurer loses its right to control the litigation and to reject what it considers an unfavorable settlement."); *Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 266 F.Supp.2d 964, 968 (N.D.Iowa 2003) (predicting that the Iowa Supreme Court would "hold that an insurer's refusal to defend a suit against its insured results in the insurer losing the right to control the defense of the action"); *Eigner v. Worthington*, 57 Cal.App.4th 188, 66 Cal.Rptr.2d 808, 813 (1997) ("When an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate."); *Bell-South Telecomms., Inc. v. Church & Tower of Fla., Inc.*, 930 So.2d 668, 673 (Fla. Dist.Ct.App.2006) (explaining that "once an insurer wrongfully withdraws from the defense of a case, the insured has the right to refuse to allow the insurer to re-enter the case and take charge of it"); *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Haw.*,

*Ltd.,* 76 Hawai'i 277, 875 P.2d 894, 913, *on reconsideration sub nom. Sentinel Ins. Co., Ltd. v. First Ins. Co. of Haw., Ltd.,* 76 Hawai'i 453, 879 P.2d 558 (1994) ("[T]he insurer that refuses to defend does so at its own peril[:] . . . the insurer forfeits any right to control the defense costs and strategy, including the right to compel the insured's cooperation in the defense of the claims; if it loses its claim of no duty to defend, it will be obliged to reimburse the insured for all reasonable defense fees and costs properly incurred."); *Orleans Vill. v. Union Mut. Fire Ins. Co.,* 133 Vt. 217, 335 A.2d 315, 318 (1975) (explaining that "an insurer who refuses to defend after timely demand is made upon it to do so cannot control the defense or expect advance notice of the refused party's trial strategy"); *Grube v. Daun,* 173 Wis.2d 30, 496 N.W.2d 106, 124 (Wis.Ct.App.1992) (holding that the insurer lost its contractual right to control insured's defense when it inappropriately refused to defend insured and explaining that "to allow an insurer to step in and control the insured's defense after originally refusing to defend would compromise the success of the insured's defense and would waste the judicial resources which already had been used to resolve the case").

In support of its argument, CIC–VT cites a case in which the Idaho Supreme Court held that the "breach of the duty to defend does not prevent the insurer from later providing a defense." *Exterovich v. City of Kellogg,* 139 Idaho 439, 80 P.3d 1040, 1043 (2003). In *Exterovich,* after the insurer declined to defend the City, the City hired its own counsel and defended the suit for three years before filing a third-party claim against the insurer. *Id.* at 1042. The City ultimately reached a partial settlement with the plaintiffs, admitted liability, waived its right to appear at the hearing to determine the plaintiffs' damages, agreed that the district court could determine those damages in the same manner as if default had been entered against the City for failure to plead or otherwise defend, and assigned to the plaintiffs all claims and causes of action that it had against the insurer. *Id.* The trial court subsequently held that the insurer had breached its duty to defend under the policy but denied the insurer's request to participate in the damages hearing. *Id.* The Idaho Supreme Court reversed, finding that under the circumstances presented—i.e., where "the City had admitted liability and ceased defending against the [plaintiffs'] claims, and the district court had ruled there was coverage, so that [the insurer] was liable for any damages awarded to the [plaintiffs] up to the policy limits"—it was an abuse of discretion not to permit the insurer to participate in the trial on damages. *Id.* at 1043.

The Court finds the instant case distinguishable. Unlike the City in *Exterovich,* Plaintiff has not ceased defending against the claims in the Underlying Action. Instead, Plaintiff has hired counsel to put forth a vigorous defense in the Underlying Action and wishes to continue with its chosen counsel rather than change attorneys at a late stage in the litigation. Plaintiff argues that given the complex nature of the claims involved in the Underlying Action, it will suffer substantial prejudice if CIC–VT can take over control of Plaintiff's defense more than a year following the initiation of the law suit. No such risk of prejudice was present in *Exterovich,* where the insured had ceased defending the claims against it and no attorney challenged the plaintiffs' evidence at the damages hearing. The Court thus finds *Exterovich* distinguishable and unpersuasive.

Instead, the Court finds analogous *BellSouth Telecommunications,* a Florida case wherein the insurer argued that although

it had wrongfully refused to defend, the insured had an obligation to accept its defense once it accepted the duty to defend without a reservation of rights. 930 So.2d at 671. The Florida appellate court disagreed with the insurer:

> We conclude that, under the circumstances presented herein, Liberty has forfeited its right to defend BellSouth in [the underlying litigation]. Liberty had a duty to defend, and BellSouth's late notice did not relieve Liberty from that obligation as there was clearly no prejudice.... Liberty, therefore, wrongfully refused to defend instead of defending with a reservation of rights. BellSouth, therefore, was forced to assume its own defense and has done so for over a year. BellSouth's chosen attorney has engaged in discovery and an investigation of the facts, and is a highly experienced attorney in this particular field. At this stage, BellSouth would suffer material harm if forced to relinquish control of its defense to Liberty, as Liberty is also representing Church & Tower in a pending appeal *against* BellSouth arising out of this same lawsuit, and Liberty's liability is either $1,000,000 or $2,000,000 while BellSouth's potential liability is substantially higher.

*Id.* at 671–72. This Court finds the Florida court's reasoning persuasive and applicable to the instant case. Like the insurer in *BellSouth,* CIC–VT argues that despite the fact that it initially wrongfully refused to defend Plaintiff, Plaintiff must now accept its defense. The Court concludes that Plaintiff, having been forced to assume its own defense and having done so

for over a year, would suffer material harm if forced to relinquish control of its defense to CIC–VT.

After reviewing relevant treatises and case law, the Court predicts that the South Carolina Supreme Court, upon consideration of the circumstances presented in this case, would find that CIC–VT lost its right to control the defense and select defense counsel when it breached its duty to defend. Therefore, the Court grants Plaintiff summary judgment with respect to this issue and declares that Plaintiff has a right to select its defense counsel in the Underlying Action.

### B. Duty to Reimburse All Reasonable Costs

Plaintiff also seeks a declaration that CIC–VT's duty to defend includes all reasonable costs incurred by Plaintiff related to all claims and counterclaims in the Underlying Action, including costs incurred prior to Plaintiff's formal tender of the suit to CIC–VT. CIC–VT argues that the Court should decline to consider the issue of costs because it is not ripe, as Plaintiff has not provided CIC–VT with any legal bills, despite CIC–VT having provided Plaintiff with two separate confidentiality orders,[4] and CIC–VT has not refused to pay any bill. The Court disagrees with CIC–VT that this issue is not ripe for review. Plaintiff does not seek summary judgment based on an alleged breach of contract arising from any non-payment of defense costs. Instead, Plaintiff's Second Motion for Summary Judgment seeks a declaration from the Court regarding CIC–VT's duties with respect to payment

---

**4.** Plaintiff claims that in March 2014, Plaintiff disclosed the total amount of the invoices that it had paid its counsel and offered to produce the invoices if they would be adequately protected from disclosure. Plaintiff asserts that CIC–VT's counsel has refused to grant the requested protection and instead has insisted upon a narrowly drawn order that would not protect all confidential information. According to Plaintiff, CIC–VT has not served any discovery requests in the case, and Plaintiff's standing offer to produce the invoices remains subject only to a reasonable protective order.

of defense costs in the Underlying Action. Accordingly, the Court will consider the scope of CIC–VT's duty to reimburse reasonable defense costs.

### i. Duty to Reimburse Costs of Prosecuting Counterclaims

According to Plaintiff, CIC–VT has a duty to defend the entire suit, including claims that may not be subject to indemnification as well as counterclaims that are inextricably intertwined and part of the defense strategy to limit or defeat liability. Plaintiff maintains that all of the work that has been done by its counsel in the Underlying Action is part of a comprehensive defense of the suit, and that the counterclaims are essentially mirror images of the defenses, involving overlapping facts and law. In its Response, CIC–VT agrees with Plaintiff that where a suit alleges both covered and non-covered causes of action, the insurer must defend the entire suit, and CIC–VT recognizes that some of the legal expenses associated with the counterclaims filed by Plaintiff in the Underlying suit likely will be impossible to separate from the defense of the suit. However, CIC–VT maintains that legal costs that are clearly attributable solely to the counterclaims are not covered by the Policy. In its Reply, Plaintiff argues that none of the defense costs can be separated from the costs incurred for prosecuting the counterclaims because no counterclaim stands on its own.

■■■ "An insurer that breaches its duty to defend and indemnify the insured may be held liable for the expenses the insured incurs in providing for his own defense." *Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 436 S.E.2d 182, 186 (S.C.Ct.App. 1993) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 124 S.E.2d 602 (1962)). The Policy, which provides that CIC–VT has "the right and duty to *defend* a suit," makes no mention of the prosecution of

counterclaims. Commercial Liability Coverage 7 (emphasis added). However, even where an insurance policy is silent with respect to counterclaims, some courts have permitted recovery of fees incurred in asserting counterclaims that were "inextricably intertwined with the defense of [an insured's] claims and necessary to the defense of the litigation as a strategic matter." *Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.*, 229 F.Supp.2d 284, 289 (S.D.N.Y.2002) (internal quotation marks omitted).

There is insufficient evidence in the record to support a declaration on the issue of counterclaims. Although the record contains the complaint in the Underlying Action (ECF No. 1–2), neither Plaintiff's answer nor any other evidence of its counterclaims can be found in the record. The Court has no way of verifying Plaintiff's assertion that its counterclaims are part of a comprehensive defense and inextricably intertwined with its defenses. Thus, the Court finds that there is a question of fact as to whether CIC–VT has a duty to pay for the costs of the counterclaims. Accordingly, the Court denies summary judgment on this issue.

### ii. Duty to Reimburse for Pre–Tender Costs

■■■ Plaintiff contends that CIC–VT has no right to avoid costs incurred prior to the date of the first tender of the defense to CIC–VT, as the Policy plainly states that Plaintiff will be reimbursed for costs taxed to it in defending the suit and there is no reference to the date of the first tender of the defense to CIC–VT. Plaintiff further argues that by breaching its duty to defend in the first instance, CIC–VT lost any implied right it may have had to control the costs of the defense, which would include any implied right to avoid costs prior to the first tender of the defense. CIC–VT responds that it has no

duty to reimburse fees and costs Plaintiff incurred prior to tendering the defense of the Underlying Action to CIC–VT. Because the Policy requires prompt notice of a suit, CIC–VT maintains that notice of a claim is a condition precedent to the duty to defend. According to CIC–VT, allowing an insured that disregarded a policy's notice provision to recover its pre-tender expenses would render meaningless contractual terms necessary to trigger the insurer's performance under the policy. Moreover, because the Policy expressly states that an "**insured** must not make payments or assume obligations or other costs except at the **insured**'s own cost," Commercial Liability Coverage 12, CIC–VT contends that the pretender costs were costs voluntarily assumed by Plaintiff, as no conduct by CIC–VT caused Plaintiff to incur those costs.

 CIC–VT fails to cite any South Carolina case to support its argument that timely notice is a condition precedent to the duty to defend. To the contrary, under South Carolina law, the duty to defend arises when an underlying suit is brought against the insured with allegations that are arguably within the scope of the insurance policy's coverage. *See Allstate Ins. Co.*, 193 .S.E.2d at 530 (explaining that "Allstate's obligation to defend existed from the time the actions were instituted and continued until it fulfilled its obligation under its policy"). Therefore, an insurer's duty to defend is triggered when the underlying claim is brought and thus "pre-exists any obligation on the part of the insured as to notice or compliance with the voluntary payment provision of an insurance contract." *Liberty Mut. Ins. Co. v. Black & Decker Corp.*, 383 F.Supp.2d 200, 205 (D.Mass.2004) (quoting *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F.Supp.2d 847, 857 (E.D.Mich.1997)).

 Plaintiff's duty to provide notice of a suit is a covenant under the Policy, not a condition precedent to CIC–VT's duty to defend. "The purpose of a notification requirement is to allow for investigation of the facts and to assist the insurer in preparing a defense." *Vermont Mut. Ins. Co. v. Singleton By & Through Singleton*, 316 S.C. 5, 446 S.E.2d 417, 421 (1994). Although the failure of an insured to comply with a notice requirement may bar recovery by the insured, *Squires v. Nat'l Grange Mut. Ins. Co.*, 247 S.C. 58, 145 S.E.2d 673, 677 (1965), "[w]here the rights of innocent parties are jeopardized by a failure of the insured to comply with the notice requirements of an insurance policy, the insurer must show substantial prejudice to the insurer's rights" before recovery is barred. *Vermont Mut. Ins. Co.*, 446 S.E.2d at 421 (citing *Factory Mut. Liab. Ins. Co. of Am. v. Kennedy*, 256 S.C. 376, 182 S.E.2d 727, 729–30 (1971) (holding that "in an action affecting the rights of innocent third parties under an automobile liability insurance policy, the noncompliance by the insured with policy provisions as to notice and forwarding suit papers will not bar recovery, unless the insurer shows that the failure to give such notice has resulted in substantial prejudice to its rights")); *see Whittington v. Ranger Ins. Co.*, 261 S.C. 582, 201 S.E.2d 620, 623–24 (1973) (extending *Factory Mutual's* substantial prejudice requirement beyond mandatory automobile insurance to voluntary insurance). Therefore, under South Carolina law, "the duty to notify is merely a covenant that, absent a showing of prejudice, does not excuse the insurer from complying with its duty to defend." *Sherwood Brands, Inc. v. Hartford Acc. & Indem. Co.*, 347 Md. 32, 698 A.2d 1078, 1084 (1997) (differentiating between covenants and conditions precedent in insurance notice provisions); *see also Black & Decker Corp.*, 383 F.Supp.2d at 207 (concluding

"that the question of when the duty *arises* is distinct from when the duty is *breached,* and in a state [that] . . . requires prejudice for the late notice defense[,] notice is deemed an independent obligation of the insured, not a condition precedent to coverage").

Plaintiff argues that by breaching its duty to defend in the first instance, CIC–VT lost any implied right it may have had to control the costs of the defense, which would include any implied right to avoid costs prior to the first tender of the defense. There does not appear to be a case from the South Carolina Supreme Court addressing the issue of whether an insurer that breached its duty to defend must pay the defense costs incurred by the insured prior to notifying the insurer of the underlying suit. Thus, the Court again must look to treatises and decisions from other courts for guidance. *See Twin City Fire Ins. Co.,* 433 F.3d at 369.

The Court finds persuasive the reasoning of Maryland's highest court in *Sherwood Brands.* There, the court first found that, as in South Carolina, in Maryland "the duty to defend arises upon the happening of the insured event but that the duty is not breached until, after notice of the event, the insurer unjustifiably declines to fulfill its obligations." *Sherwood Brands,* 698 A.2d at 1085. The court then observed that

> at least three possibilities bearing on the insurer's exposure for pre-notice litigation expenses are presented: (1) following a delayed notice, the insurer undertakes the defense, (2) following a delayed notice, the insurer declines to undertake the defense based on the delayed notice, asserting that the delay constitutes a material breach on the part of the insured, thereby excusing performance by the insurer, or (3) following a delayed notice, the insurer de-

clines to undertake the defense for some other reason that would likely have been asserted without regard to the delayed notice. In each circumstance, the insurer necessarily looks to the insured's covenant not to incur litigation expenses without the consent of the insurer, which complements the covenants to notify the insurer, to forward relevant papers, and to cooperate with the insurer.

*Id.* at 1085–86.

Both *Sherwood Brands* and the instant case involve the third situation, which the Maryland court described as "the most clear cut." *Id.* at 1086. In that setting, if the late-notified insurer declines to defend on the ground that the claims were not within the policy coverage, and the court later determines that the insurer breached its duty to defend because the claims actually were potentially within the coverage, then "the insurer is liable for all damages incurred by the insured as a result of that breach." *Id.* The Maryland court found the timing of the notice to be irrelevant, explaining that

> [i]f the delay in giving notice is not a factor in the insurer's decision not to defend—if it would have declined the defense in any event based on its mistaken conclusion that there was no potential coverage—the insurer should not later be allowed to use the delay as a bar to reimbursing the insured for the reasonable expenses incurred in defending the covered claim.

*Id.* at 1086–87. The court thus held that where the insurer did not demonstrate prejudice from the delay in notice, the insurer was liable for pre-notice fees and expenses incurred by the insured. *Id.* at 1087.

As in Maryland, in South Carolina an insurer's duty to defend arises upon the filing of the underlying complaint, and late notice from the insured does not excuse

the insurer from complying with its duty to defend except where the insurer can show prejudice. In jurisdictions with this same legal framework, the trend appears to be in favor of permitting recovery of pretender costs in cases where the insurer breached its duty to defend. *See, e.g., TPLC, Inc. v. United Nat'l Ins. Co.,* 44 F.3d 1484, 1493 (10th Cir.1995) (applying Pa. law) (holding that "in the absence of a showing of prejudice, the insurer's duty to defend includes the duty to reimburse for reasonable costs of defense incurred prior to notice, as well as for subsequent defense costs"); *Black & Decker Corp.,* 383 F.Supp.2d at 207 (predicting that the Massachusetts Supreme Judicial Court "would find that pre-notice defense costs are recoverable absent prejudice"); *Nat'l Sur. Corp. v. Immunex Corp.,* 176 Wash.2d 872, 297 P.3d 688, 696 (2013) (explaining that because "the duty to defend arises not at the moment of tender, but upon the filing of a complaint alleging facts that could potentially require coverage, ... an insured can recover pretender fees and costs except where a late tender prejudiced the insurer"). This Court predicts that the South Carolina Supreme Court would join these courts and hold that, absent a showing by the insurer of substantial prejudice caused by the insured's late notice, an insurer who breached its duty to defend will be liable for reasonable costs of defense incurred both before and after notice.

As the Court found in the previous Order on Summary Judgment, CIC–VT has a duty to defend Plaintiff in the Underlying Action. Moreover, CIC–VT has failed to show that it was substantially prejudiced by Plaintiff's delayed notice of the Underlying Action. Accordingly, the Court declares that CIC–VT has a duty to reimburse Plaintiff for the reasonable costs of defense of the Underlying Action incurred both before and after Plaintiff tendered notice of the suit.

## C. Bad Faith

Finally, Plaintiff requests that the Court declare that CIC–VT's acts prior to and during this litigation constitute ongoing bad faith. Plaintiff mentions this requested relief in both the introduction and the conclusion of its Second Motion for Summary Judgment; however, Plaintiff does not make any arguments regarding bad faith in the discussion section of its Motion. Moreover, Plaintiff neither sets out the legal standard for bad faith nor details how CIC–VT's actions satisfy that standard. Accordingly, the Court concludes that Plaintiff has failed to show that there is no genuine dispute as to any material fact with respect to Plaintiff's claim for bad faith. Accordingly, the Court denies summary judgment as to Plaintiff's claim for insurance bad faith.

### *CONCLUSION*

For the foregoing reasons, it is **ORDERED** that Plaintiff's Second Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

**AND IT IS SO ORDERED.**