BENTON, J.
Indemnity Insurance Corporation of DC (Indemnity), the defendant in garnishment proceedings below, appeals a final judgment of garnishment awarding Leilani Caylao $714,116.44, the amount of the default judgment and costs award she had obtained against Coast Entertainment, LLC (Coast). We reverse and remand for further proceedings.
Ms. Caylao alleged a Coast employee injured her on August 14, 2010, in an altercation at a club Coast owned. After her counsel wrote Coast about her assault and battery claim, Coast’s insurance agent sent a copy of the claim letter to Indemnity on October 13, 2010. Coast had general liability insurance under an Indemnity policy which was in effect at the time of the incident. Between October 13, 2010 and March 8, 2011, Indemnity investigated events surrounding the incident,[1] then no *784 tified Ms. Caylao’s attorney it had concluded that Coast had no liability and that it was denying the claim. According to Ms. Caylao’s counsel, Indemnity’s letter closed with a request that Ms. Caylao confirm in writing that she was not filing a lawsuit, but he did not do so because he had “always intended on filing a lawsuit.”
On December 29, 2011, Ms. Caylao did file suit against Coast, without notifying Indemnity or its counsel.[2] Coast did not answer or otherwise respond to the complaint she served, and the clerk of the court entered a default against Coast on February 6, 2012. On March 2, 2012, Ms. Caylao moved for entry of a default final judgment against Coast, submitting her affidavit itemizing damages in the amount of $713,670.44.[3] The trial court entered a default final judgment in this amount on April 10, 2012.
Initiating the proceedings which gave rise to the present appeal, Ms. Caylao then moved for a writ of garnishment against Indemnity for the amount of the judgment plus costs, a total of $714,116.44. An alternative writ issued, a copy of which Ms. Caylao (through counsel) forwarded to Indemnity, which received it on May 8, 2012.[4] Indemnity took the position that Coast had breached policy conditions requiring Coast to notify Indemnity in the event of a lawsuit and to forward suit papers “as soon as practicable.” Indemnity asserted Coast thereby forfeited coverage, and elected not to represent Coast in an effort to set the judgment aside.
Instead, Indemnity wrote Coast saying: “As a result of your actions and inactions as outlined above, [Indemnity] is hereby expressly denying any coverage for, or duties owed in connection with the alleged incident, including but not limited to any duty to indemnify, defend or to incur any expenses as a result of the incident.” Indemnity answered Ms. Caylao’s writ on May 29, 2012, again disclaiming any obligation to Coast or Ms. Caylao, based on Coast’s breach of policy conditions. Indemnity asserted Coast’s breach of these duties caused judgment to be entered “in the amount of $714,116.44 in what was a defensible lawsuit,” and that Indemnity was “irrevocably prejudiced” on account of Coast’s breach.
The general liability conditions in the Indemnity policy insuring Coast unambiguously required Coast to notify Indemnity of any lawsuit, providing in relevant part:
SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS
2. Duties in The Event Of Occurrence, Offense, Claim Or Suit
*785 a. You must see to it that we are notified as soon as practicable of an “occurrence” or an offense which may result in a claim....
[[Image here]]
b. If a claim is made or “suit” is brought against any insured, you must:
(1) Immediately record the specifics of the claim or “suit” and the date received; and
(2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or “suit” as soon as practicable.
c. You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or “suit.”...
The trial court found that Indemnity did not get timely notice of Ms. Caylao’s lawsuit, as required by the policy, and that Coast never forwarded suit papers to Indemnity.[5]
The trial court rejected, however, Indemnity’s argument that these breaches relieved Indemnity of the obligation to pay Ms. Caylao’s judgment against Coast. The trial court reasoned that, in order to be excused from contractual obligations based on an insured’s failure to cooperate, an insurer must demonstrate that it exercised due diligence and good faith in trying to bring about the insured’s cooperation, once the insured notified it of the claim. The trial court concluded that Indemnity was “unable to show that it exercised due diligence and good faith in trying to bring about its insured’s cooperation” because the “record shows” that Indemnity “never had a confirmation that a lawsuit would not be filed and never contacted [Ms. Cay-lao], whether through her counsel or otherwise, and did not do anything else to bring about the cooperation of its insured.” On this basis, the trial court denied the motion to dissolve the writ of garnishment.
But there was no evidentiary hearing and therefore no evidentiary support for the trial court’s factual conclusions that Indemnity failed to exercise due diligence and did. nothing to bring about Coast’s cooperation. See generally Cont’l Cas. Co. v. City of Jacksonville, 550 F.Supp.2d 1312, 1340 (M.D.Fla.2007) (noting that where insurer offered to defend the City of Jacksonville subject to a reservation of rights, the insurer exercised due diligence and good faith in trying to bring about the insured’s cooperation, when it took steps to ensure the City knew it was bound by the conditions of the insurance policy, by instructing the City to notify it if a suit was filed so that' it could “re-evaluate its position and determine whether it owe[d] a duty of defense with respect to a claim”); First Am. Title Ins. Co. v. Nat’l Union Fire Ins. Co. of Pittsburgh, Pa., 695 So.2d 475, 477 (Fla. 3d DCA 1997) (concluding that, when insurer denied the claims by asserting a policy exclusion, but also instructed the insured to notify the insurer of any lawsuit filed so that it could reevaluate its position to determine whether it owed a duty of defense based on the allegations of the complaint, the insured was not free to enter into a settlement *786 independently without notification to or consent of the insurer, and the “insured’s failure to comply with the relevant policy provisions relieved the insurer of its obligations under the policy”).
Although Indemnity’s letter did deny coverage, it did not do so until after default judgment had already been entered against Coast. Cf. Philadelphia Indem. Ins. Co. v. Kohne, 181 Fed.Appx. 888, 892 (11th Cir.2006) (“[Ujnequivocal denials of coverage such as those [the insurer] made here forfeit an insurer’s right to invoke cooperation conditions against its insured. Had [the insurer] made some effort to ensure that [the driver] knew he was still bound by the policy’s conditions, then a question of fact might remain about whether [the insurer’s] efforts were sufficiently diligent.”).
In the present case, conditions precedent to coverage were met when Coast notified Indemnity of the occurrence and of the claim, in forwarding Ms. Caylao’s counsel’s letter. Coast’s subsequent failure to comply with the provisions of the policy requiring it to notify Indemnity that suit had been filed and to send copies of legal papers received in connection with the lawsuit was, to be sure, a breach of Coast’s obligations under its contract of insurance with Indemnity.[6] “Cases involving an insured’s notice of occurrence, notice of claim, or notice of suit are governed by the fundamental principle of contract law that a material breach by one contracting party excuses the performance by the other party and that an immaterial breach does not.” 14 Steven Plitt Et Al, Couch on Insurance § 199.81 (3d ed. 2012). The question is whether Coast’s breach justified Indemnity’s repudiation of its obligations under the policy or whether Indemnity’s repudiation was itself a breach.
Indemnity had the burden to show that it was Coast’s breach that resulted in the existence of the judgment debt, not only when the default judgment was entered but also when Ms. Caylao sought to collect. See Ramos v. Nw. Mut. Ins. Co., 336 So.2d 71, 75 (Fla.1976); BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc., 930 So.2d 668, 671 (Fla. 3d DCA 2006) (“[A]n insured’s violation of a notice requirement [by failing to timely notify the insurer of the lawsuit] does not relieve the insurer of its contractual obligation to defend when no prejudice is shown.”); Nationwide Mut. Fire Ins. Co. v. Beville, 825 So.2d 999, *787 1003-04 (Fla. 4th DCA 2002) (stating that while it “is true the policy notice provision requires that in the event of suit the insured must provide the carrier with written notice ‘as soon as practicable,’ ” the insured’s violation of the notice provision by failing to send the suit papers to the carrier for six months did not allow the carrier to avoid liability for the expenses of defense during that period in part because it was “clear that the carrier can point to no prejudice from the insured’s failure to send the suit papers earlier”).[7]
Coast’s allowing entry of judgment against it in the amount of $713,670.44, without notifying Indemnity of a defensible suit, would materially prejudice Indemnity, and preclude recovery against Indemnity, unless Indemnity unjustifiably refused to file and pursue a viable motion to set the judgment against Coast aside. But Indemnity (which had a contractual right to Coast’s cooperation in filing such a motion) had an obligation to file a motion to set aside the judgment, if the original lawsuit was defensible, and grounds to set aside the judgment existed. In that event, Coast’s breach would not have excused or discharged performance by Indemnity, to and including filing a motion on behalf of Coast to set aside Ms. Caylao’s judgment against Coast.[8] See, e.g., Allstate Floridian Ins. Co. v. Farmer, 104 So.3d 1242, 1250 (Fla. 5th DCA 2012) (concluding that because the jury found the insurer was not prejudiced by the insured’s failure to submit a sworn proof of loss form, “there was no material breach of the contract”); Burgess v. Am. Fid. Fire Ins. Co., 107 Mich. App. 625, 310 N.W.2d 23, 25 (1981) (“To have been deprived of an opportunity to defend, in the case at bar, may or may not have prejudiced the rights of the insurance carrier.... [Sjuch prejudice does not become material where the carrier, upon notice, does not act or properly act to protect its interest and/or that of its insured.”); 13 Steven Plitt, supra § 193:70 (noting that “prejudice in the context of liability insurance most often turns on the degree to which the insurer has been hampered in preparing and/or conducting a defense of the insured, or the related issue of negotiating and settling with the third-party claimant” and liability insurers have failed to prove they were prejudiced by lack of timely notice where the “insurer could set aside the default judgment and had significant postjudgement [sic] control over proceedings”). If Ms. Caylao cannot show on remand that grounds existed to set the judgment against Coast aside, she cannot prevail.
But Indemnity’s duty to defend Coast extended to moving to set aside Ms. Cay-lao’s judgment against Coast, if that was feasible. Compare Alabama Farm Bureau Mut. Cas. Ins. Co. v. Harris, 197 So.2d 567, 570 (Fla. 3d DCA 1967) (concluding that where the insurer was proper *788 ly notified of the accident and had the opportunity to make an -investigation, the breach, if any, based on the insurer’s not receiving notice of the suit until after entry of default “was not material and did not foreclose any rights” of the insurer when the injured party’s lawyer offered to have the default set aside if the insurer would defend and the insurer refused the offer). Cf. Thomas v. W. World Ins. Co., 343 So.2d 1298, 1303 (Fla. 2d DCA 1977) (noting “it is black-letter contract law that a party suffering a breach is obligated to take all reasonable means to protect himself and mitigate his damages”).
Because the trial court took no evidence regarding whether Indemnity was under an obligation to file and pursue a motion to set aside the default judgment, we reverse for an evidentiary hearing on the question. See Thyssen, Inc. v. NOBILITY MV, 421 F.3d 295, 303 (5th Cir.2005) (noting that “entry of a default judgment is a strong starting basis for a claim of prejudice,” the “insurer’s loss of opportunity to litigate the action weighs in favor of finding prejudice,” and “[i]f damages have been tried and found, this also weighs in favor of prejudice,” and that while “[n]o case has required procedural exhaustion by an insurer, such as appealing the default judgment or seeking to have it set aside, before a showing of prejudice can be made,” this “might weigh in favor of lack of prejudice”).
Reversed and remanded.
LEWIS, C.J. and WETHERELL, J., concur.

. In an affidavit, Scott Wessing, Vice President of Claims for Indemnity, averred that during the investigation period, Indemnity spoke with Ms. Caylao's attorney, its insured, *784 Coast employees, and independent witnesses, and also obtained "police reports and the like.”

. The complaint also named as a defendant the Coast employee who allegedly battered Ms. Caylao. When the employee filed an answer denying the allegations, he was voluntarily dismissed from the action.

. Ms. Caylao’s affidavit indicated total medical expenses incurred were $20,852.64 (with no supporting documentation). She stated that her future medical treatment based on "ongoing restrictions, pain and discomfort” would be $5,000 per year (with no supporting medical evidence and no description of medical problems). She stated her life expectancy was 45.72 years according to the Social Security Administration’s Actuarial Life Table. She therefore calculated her "lifetime medical expenses” would total $228,600 ($5,000 per year multiplied by 45.72 years, with no reduction to present value). She stated she had suffered past noneconomic damages of $15,000 and that she reasonably expected future noneconomic damages of $450,000.

.The writ issued on April 17, 2012. As Indemnity's putative appointed agent, the Florida Secretary of State accepted the writ on April 24, 2012.

. Mr. Wessing’s affidavit supports the trial court's finding that Indemnity had no notice of Ms. Caylao’s suit until her counsel forwarded the writ of garnishment. This fact does not seem to be in dispute. Indemnity cannot be said to have disavowed its obligation to defend Coast, in the event Ms. Caylao filed suit, simply because it concluded, after a five-month investigation, that Coast was not liable for the damages she claimed. Neither Coast nor Ms. Caylao alleges that Indemnity took any action that would give Coast reason to believe it had been released from its obligation to notify Indemnity in the event of suit.

. See, e.g., Scottsdale Ins. Co. v. Bieber & Assocs., Inc., 105 Fed.Appx. 340, 343-44 (3d Cir.2004) ("[T]he plain language of the policy!] contains no language to indicate that compliance with subsection 'a' releases an insured from the duty to comply with subsection ‘b’. Similarly, although the insured’s duties to the insurer are the same whether a claim is brought or suit is filed, use of the disjunctive alone cannot fairly be read as a release from any future duty to provide notice of a lawsuit where notice of a claim has already been given. This reading of the policy is bolstered by subsection 'c' ... which specifically and unequivocally imposes a duty on the insured to assist the insurer by "[i]m-mediately sending] ... copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'.... Continuing notice requirements such as the one reflected in subsections ‘a’ and 'b' acknowledge the fact that, however involved the insurer becomes in defending a claim, the insured remains the party with primary access to the information necessary to do so at each of the three relevant stages. Because the insured is the party in the best position to know when legal action has been taken against it, notifying the insurer of such action is similar in importance to but functionally different from providing notice of an occurrence or claim.... Rather than focusing on [the insurer's] activities before the suit was filed, the court should have determined whether [the insurer] had actual or constructive knowledge of the lawsuit after it had been filed, and whether, therefore, [the insurer] was actually prejudiced by any failure of [the insured] to provide notice in accordance with the policy.”).

. In contrast, if an insured breaches the policy requirement to provide notice of a claim altogether, prejudice to the insurer is presumed; but the presumption may be rebutted by the insured (or a party standing in the shoes of the insured) showing the insurer was not prejudiced by failure to comply with the condition. See Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985) (“The burden should be on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts and to examine the insured.”). Here indemnity does not dispute that it received notice of Ms. Caylao’s claim and was able to conduct a five-month investigation.

. See 23 Williston on Contracts § 63:3 (4th ed. 2013) ("Whether a breach is material and important is a question of degree, which must be answered by weighing the consequences of the breach in light of the actual custom of persons in the performance of contracts similar to the one involved in the particular case.”).