[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12945
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cv-00153-SDM-MAP


SCOTT, BLANE, AND DARREN RECOVERY, LLC,
ANOVA FOOD, INC.,

Plaintiffs-Counter Defendants-
Appellants,

versus

AUTO-OWNERS INSURANCE COMPANY,
a Michigan insurance company,

Defendant-Counter Claimant-
Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 3, 2018)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

In January 2015, Plaintiff-Appellant Anova Food, Inc. sued Auto-Owners Insurance Company, advancing two claims under Florida law: breach of written insurance contracts and bad faith denial of coverage. In May 2017, the district court entered final judgment in favor of Defendant-Appellee Auto-Owners, finding that Auto-Owners owed no duty under its insurance Policy to defend or indemnify Anova. Anova appealed. After review, we affirm.

## I.  BACKGROUND

### A.  The Auto-Owners Policy

In August 2005, Defendant Auto-Owners, a Michigan based insurance company, issued a policy of commercial general-liability insurance to Plaintiff-insured Anova Food, Inc. ("Anova"). The policy was effective for a term beginning on July 8, 2005 and ending on July 8, 2006. In April 2006, Auto-Owners renewed the policy, effective for a term beginning on July 8, 2006 and ending on July 8, 2007. The renewed policy contained the same coverage for "advertising injur[ies]" as the first policy (collectively referred to as the "Policy"). The Policy was an "occurrence" policy, meaning that it covered offenses committed during the term of coverage, regardless of when a legal claim arising from an occurrence is made against Anova.

2

In relevant part, the Policy covered "advertising injur[ies]," "caused by an offense committed in the course of advertising [Anova's] goods, products or services."  The Policy defined "advertising injury" as follows:

Advertising injury means injury arising out of one or more of the following offenses:
a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
b.  Oral or written publication of material that violates a person's right of privacy;
c.  Misappropriation of advertising ideas or style of doing business; or
d.  Infringement of copyright, title or slogan.

At issue in this appeal is whether Anova's advertisements "disparage[d] a person's or organization's goods, products or services."

The Policy also contained an exclusion from the coverage for "advertising injury."  That exclusion provided:

2.  Exclusions
This insurance does not apply to
b.  "Advertising injury" arising out of:
(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;
(2) The failure of [Anova's] goods, products or services to conform with advertised quality or performance;
(3) The wrong description of the price of goods, products or services; or
(4) An offense committed by an insured whose business is advertising, publishing or telecasting.

Also at issue in this appeal is the exclusion set forth in subsection (2).

3

If any lawsuit filed against Anova alleged a covered "advertising injury," the Policy required Defendant Auto-Owners to defend Anova and to pay damages that Anova would be "legally obligated to pay" for causing an "advertising injury." The Policy required Anova to notify Auto-Owners in writing as soon as practicable of an "'occurrence' or an offense which may result in a claim" or any "claim" or "suit" brought against Anova.  In addition, the Policy directed Anova to "[i]mmediately" send to Auto-Owners a copy of any "demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"

The Policy did not define "claim," but did define "suit" as "a civil proceeding in which damages because of . . . 'advertising injury' to which this insurance applies are alleged."  The Policy also defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Policy stated that no suit could be brought against Auto-Owners concerning the Policy's coverage of advertising injuries "unless all of [the Policy's] terms have been complied with."

## B.  King Tuna Files the Oregon Suit Against Anova in 2007

In July 2007, King Tuna, Inc., a business competitor of Anova, sued Anova in the United States District Court for the District of Oregon (the "Oregon Suit"). In its complaint, King Tuna advanced a claim for unfair trade practices and false

advertising under the Lanham Act, 15 U.S.C. § 1051 et seq., as well as a state law claim under Oregon's Unfair Trade Practices Act, Or. Rev. Stat. § 646.605 et seq.

King Tuna alleged that Anova falsely advertised its tuna. King Tuna accused Anova of making false claims in its public marketing materials that its tuna products were superior to its competitor's offerings because Anova treated its tuna meat with a smoking process using filtered hickory wood chips, which exposed its tuna meat to low concentrations of carbon monoxide. King Tuna claimed that Anova's statements misrepresented "the nature, characteristics and qualities of [Anova's] tuna products," alleging that Anova was actually treating its tuna meat with synthetic industrial carbon monoxide. According to King Tuna, these misrepresentations led to a decrease in King Tuna's sales figures and caused a loss of King Tuna's goodwill.

As detailed by King Tuna in its Oregon Suit, how a vendor treats its tuna meat can affect consumer demand. Specifically, a key concern for the marketing, sale, and delivery for sashimi grade raw tuna meat is the preservation of the red color of fresh tuna. When cut and exposed to air, the myoglobin in the tuna's muscle tissue reacts with oxygen to produce oxymyoglobin, which gives tuna meat a bright red color. But, over time, exposing tuna meat to oxygen will turn this bright red color to brown, as the oxymyoglobin oxidizes into metmyoglobin. This

process will occur even if the tuna meat is frozen at temperatures between 0 and -30 degrees Fahrenheit.

In order to prevent red tuna meat from turning brown, vendors will employ various methods of exposing tuna meat to carbon monoxide.[1] One method is to treat tuna meat with synthetic carbon monoxide, which can induce more intense coloration. According to King Tuna, treating tuna meat with synthetic carbon monoxide allows vendors to make lower grade tuna meat appear as higher grade tuna meat. A second method—and the method that Anova said it used in its advertisements—is to treat tuna meat with filtered wood smoke. According to King Tuna's Oregon Suit, consumers often prefer the latter method, favoring tuna meat that is treated with filtered wood smoke over tuna meat that is exposed directly to carbon monoxide.

## C. Letters Between Anova and Auto-Owners

In August 2007, Anova sent Auto-Owners two letters about the Oregon Suit, enclosing a copy of the Oregon Suit with each letter. Anova's first letter states, "This claim is filed by Anova Food Inc. under [the Policy] . . . for which Anova hereby requests the acceptance of this claim by you and the provision of an

---

[1]As explained in King Tuna's Oregon Suit, carbon monoxide interacts with myoglobin in the tuna's muscle tissue to form carboxymyoglobin. Carboxymyoglobin allows the tuna meat to retain its bright red color while it is frozen for transport and stored in warehouses.

appropriate defense and such other payments to which it is or may be entitled to pursuant to the [Policy]."

Twelve days after Anova sent the second letter, Auto-Owners sent a response letter denying coverage because King Tuna had not made any claim for an "advertising injury" and stating:

> Auto-Owners has determined that there is no coverage for the claims made against Anova in [King Tuna's Oregon Suit] and Auto-Owners will not defend nor indemnify Anova for any loss [Anova] may sustain in this lawsuit. The basis of this determination is as follows:
>
> . . .
>
> 3. The [Policy] provides coverage for claims for damages because of advertising injury caused by an offense committed in the course of advertising [Anova's] goods, products or services. There is no claim for damages because of advertising injury as that term is defined in the [Policy].

Auto-Owners' response letter then reiterated the definition of "advertising injury" as set forth in the Policy. Based on this definition, Auto-Owners' letter concluded that "[n]one of the claims made against Anova in the lawsuit seeks damages arising out of . . . advertising offenses as defined in the [Policy]." For that reason, Auto-Owners stated that it would provide "no coverage for defense costs or attorney fees involved in defending this lawsuit . . . [and would] not indemnify Anova for any loss it may incur arising out of this lawsuit."

Auto-Owners noted that it had made this determination based in part upon the information provided by Anova, but encouraged Anova to advise Auto-Owners

7

of any additional information that may be relevant to Auto-Owners' coverage determination.

On September 10, 2007, Anova filed a motion to dismiss the Oregon Suit for lack of personal jurisdiction and improper venue. On November 2, 2007, King Tuna voluntarily dismissed the Oregon Suit without prejudice.

## D. King Tuna Files the California Suit Against Anova

On November 14, 2007, less than two weeks after voluntarily dismissing the Oregon Suit, King Tuna filed a similar complaint against Anova in the United States District Court for the Central District of California (the "California Suit"). King Tuna alleged essentially the same allegations that it alleged in the Oregon Suit—namely, that Anova was falsely advertising its Tuna products by claiming that it treated its tuna meat with filtered wood smoke while it was actually treating its tuna meat with synthetic carbon monoxide.[2]

Like its Oregon Suit, King Tuna's California Suit advanced a claim for unfair trade practices and false advertising under the Lanham Act, 15 U.S.C. § 1051 et seq. However, unlike its Oregon Suit, King Tuna's California Suit

---

[2]King Tuna amended its complaint twice. When assessing King Tuna's California Suit, we look to the allegations set forth in King Tuna's second amended complaint. Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 815 (Fla. Dist. Ct. App. 1985) ("[W]hen an original complaint has been superseded by an amended complaint, the original complaint can no longer furnish a basis for determining the insurer's duty to defend . . . [and] the allegations in the amended complaint control.").

advanced a claim under California law, accusing Anova of violating California's

Unfair Competition Law.  Cal. Bus. & Prof. Code §§ 17200 et seq. and 17500.

Anova did not notify Auto-Owners of the California Suit and failed to tender

the California Suit to Auto-Owners.  Scott, Blane, & Darren Recovery, LLC v.

Auto-Owners Ins. Co., No. 8:15-CV-153-T-23MAP, 2017 WL 2311762, at *2

(M.D. Fla. May 26, 2017).

On March 24, 2011, after more than three years of litigation in the California

Suit, the district court entered judgment in favor of Anova, finding that King Tuna

failed to prove its claims by a preponderance of the evidence.  In defending against

the California Suit, Anova incurred attorney's fees and costs of $3,656,484.93.  Id.

## E.  Procedural History

On July 26, 2015, Anova[3] filed this lawsuit against Auto-Owners, asserting

that Auto-Owners wrongfully refused to defend Anova in the Oregon Suit and the

California Suit.  Anova seeks direct and consequential damages caused by Auto-

Owners' alleged breach of the Policy, including attorney's fees and costs incurred

by Anova in litigating the Oregon Suit and the California Suit.  In response, Auto-

---

[3]There is a second plaintiff-appellant, titled Scott, Blane, and Darren Recovery, LLC ("SBD"), which is a limited liability company whose members are former shareholders of Plaintiff Anova and also members of Anova Holding USA, LLC.  Scott, Blane, & Darren Recovery, LLC, 2017 WL 2311762 at *2.  On May 31, 2010, Plaintiff Anova transferred certain assets and claims to Anova Holding USA, LLC.  Id.  Since May 2010, Plaintiff Anova has not operated as a business.  On June 24, 2011, Anova Holding USA, LLC transferred the claims alleged in this litigation to its individual members, and on April 17, 2014, the individual members formed SBD and transferred their interests in the claims alleged in this litigation to SBD.  Id.

Owners filed a counterclaim against Anova, seeking a declaratory judgment that Auto-Owners had no duty to defend or indemnify Anova against King Tuna's Oregon Suit and California Suit.

On October 17, 2016, Anova filed a motion for partial summary judgment on Anova's breach of contract claim.  That same day, Auto-Owners filed its own motion for partial summary judgment on its duty to defend Anova against the Oregon Suit and the California Suit.

On May 26, 2017, the district court issued an order granting Auto-Owners' motion for partial summary judgment on its duty to defend, granting declaratory relief on Auto-Owners' counterclaim, and denying Anova's motion for partial summary judgment.[4]  Id. at *5.  The district court also directed the clerk to enter judgment against Anova and for Auto-Owners on each of the two counts in Anova's complaint and to enter judgment against Anova and for Auto-Owners on Auto-Owners' claim for declaratory judgment in its counterclaim for declaratory relief.  Id.

The district court found, inter alia, that "Auto-Owners owed no duty under the insurance policy to defend or to indemnify Anova" for three reasons: (1) the allegations advanced by King Tuna in its two lawsuits fell outside the Policy's

_____

[4]Auto-Owners also filed a second motion to dismiss, and Anova filed a motion to strike thirteen exhibits filed by Auto-Owners in support of Auto-Owners' motion to dismiss.  The district court denied as moot Auto-Owners' motion to dismiss and Anova's motion to strike. Scott, Blane, & Darren Recovery, LLC, 2017 WL 2311762 at *5.

10

coverage based on the Policy's definition of "advertising injury"; (2) the allegations advanced by King Tuna were excluded from the Policy's coverage because they alleged that Anova's products did not conform with Anova's representations about the quality of its tuna meat; and (3) Anova's failure to comply with the Policy's notice provisions negated Auto-Owners' duty to defend Anova against King Tuna's lawsuits.  Id. at *3–5.

Anova timely appealed.[5]

## II. DISCUSSION

### A. Standard of Review

This Court reviews a district court's disposition of summary judgment motions de novo, viewing all the evidence and drawing all reasonable factual inferences in favor of the nonmoving party.  Stephens v. Mid–Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The interpretation of a provision in an insurance contract is a question of law subject to de novo review.  Stephens, 749 F.3d at 1321.

---

[5]In an Order dated October 27, 2017, this Court granted Anova's motion to amend its complaint and supplement the record to address the citizenship of the parties.  Based on the supplemented record, this Court's Order concluded that the record is sufficient to establish the district court's diversity-based subject matter jurisdiction over the case at the time the action was instituted.  Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ., 663 F.3d 1304, 1305 (11th Cir. 2011).

### B. Florida Law

The parties agree that Florida law governs this dispute because Auto-Owners delivered the Policy to Anova in Florida. State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006) (explaining that Florida adheres to the rule of lex loci contractus, which provides that "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage"). Execution of an insurance contract occurs in the place where "the last act necessary to complete the contract is performed." Colhoun v. Greyhound Lines, Inc., 265 So. 2d 18, 21 (Fla. 1972). The delivery of an insurance policy can constitute the "last act necessary" to execute a contract. Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc., 363 F.3d 1089, 1093 (11th Cir. 2004) (applying Florida law to hold that an insurer's communication of an oral insurance binder to the insured constituted the last act necessary to complete the contract).

### C. Duty to Defend

Under Florida law, an insurer's duty to defend "arises from the 'eight corners' of the complaint and the policy." Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So. 3d 174, 182 (Fla. Dist. Ct. App. 2015); see Acosta, Inc. v. Nat'l Union Fire Ins. Co., 39 So.3d 565, 575 (Fla. Dist. Ct. App. 2010). Determining whether the duty to defend is triggered involves a comparison between the

12

insurance policy at issue and "the facts and legal theories alleged in the pleadings and claims against the insured." Royal Crane, LLC, 169 So. 3d at 180–81 (quoting Stephens, 749 F.3d at 1323 (applying Florida law)).  When interpreting an insurance policy, the "[t]erms used in a policy should be read in light of the skill and experience of ordinary people." Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So. 2d 26, 29 (Fla. Dist. Ct. App. 2004) (citation omitted).

"Florida law places on the insured the burden of proving that a claim against it is covered by the insurance policy." LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997).  "[A]n insurer has no duty to defend a suit against an insured if the complaint upon its face alleges a state of facts that fails to bring the case within the coverage of the policy." McCreary v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So. 2d 692, 695 (Fla. Dist. Ct. App. 1999) (quotation omitted).  The same is true if the "complaint alleges facts that clearly bring the entire cause of action within a policy exclusion." Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 815 (Fla. Dist. Ct. App. 1985). But if the relevant pleadings allege facts that "fairly and potentially bring the suit within policy coverage," the insurer's duty to defend is triggered.  Lime Tree Village Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993) (applying Florida law); Baron Oil Co., 470 So. 2d at 815; see also U.S. Fire Ins. Co. v. Hayden Bonded Storage Co., 930 So. 2d 686, 691 (Fla. Dist.

13

Ct. App. 2006).  Any doubt about whether an insurer is under the duty to defend is resolved in favor of the insured.  Jones v. Florida Ins. Guar. Ass'n., 908 So. 2d 435, 443 (Fla. 2005).

Thus, to establish that Auto-Owners had a duty to defend Anova, Anova must show that the injury alleged in the operative complaints in the Oregon Suit or California Suit "fairly and potentially" fell under the Policy's coverage for "advertising injury."  Jones, 908 So. 2d at 442–43.

## D. The Policy's Coverage of "Advertising Injury"

The district court found that King Tuna's allegations against Anova in the Oregon Suit and the California Suit were not covered by the Policy because they did not allege an "advertising injury," as defined by the Policy.  Scott, Blane, & Darren Recovery, LLC, 2017 WL 2311762 at *3.  Defendant Auto-Owners urges us to agree with the district court, arguing that the Policy did not cover King Tuna's lawsuits because King Tuna's lawsuits alleged that Anova misrepresented the quality of its own tuna meat, not that Anova disparaged King Tuna in its advertisements.

As Auto-Owners points out, King Tuna made no allegation in either lawsuit that Anova's advertisements expressly mentioned King Tuna in order to "slander[] or libel[] [King Tuna] or disparage[] [King Tuna's] goods, products or services."  Defendant Auto-Owners also contends that the Policy did not cover King Tuna's

14

lawsuits because King Tuna never alleged that Anova disparaged King Tuna by implication.  As Auto-Owners explains, though King Tuna accused Anova of making misleading statements about the superiority of Anova's own products when compared to Anova's "competitors" or general "competition," King Tuna did not allege that Anova's advertisements singled out King Tuna as one of these competitors by name or even innuendo.

Anova disagrees and argues that King Tuna's lawsuits were covered under Anova's Policy because King Tuna's complaints contained allegations that Anova's advertisements referred to King Tuna "by necessary implication."  To support its position, Anova cites Vector Prods., Inc. v. Hartford Fire Ins. Co., 397 F.3d 1316, 1319 (11th Cir. 2005), where this Court applied Florida law to determine whether an insurer had a duty to defend an insured.

In Vector, the insurance policies contained language similar to Auto-Owners' Policy, providing coverage for damages "arising out of . . . [the] publication of material that . . . disparages a person's or organization's goods, products or services."  Id. at 1318 (alteration in original).  The insured, Vector Products, was "a relative newcomer to the business of manufacturing and selling battery chargers."  Id. at 1317.  Vector was sued by Schumacher Electric, whom this Court referred to as "[t]he industry leader" in battery charges.  Id. Schumacher's complaint alleged that Vector had made false claims in its

15

advertisements when it suggested that its products were superior to that of the "leading brand." Id. at 1318.

This Court found in Vector that Florida law was unclear, and the policies were ambiguous, as to whether Vector had to mention Schumacher's name in its advertisements in order to trigger the insurer's duty to defend a false advertising claim. Id. at 1319. In light of this ambiguity, the Court held that Schumacher's lawsuit fell within the policies' coverage, "subject to the application of the [policies'] exclusions." Id.

Defendant Auto-Owners argues that Vector is materially distinguishable from this case. Auto-Owners stresses that, in Vector, the underlying complaint against the insured alleged that the insured's advertisements were disparaging because they "suggest that [the insured's] product is superior to the 'leading brand.'" Id. at 1318. Auto-Owners argues that the allegations in Vector differ materially from those here because King Tuna alleged only (1) that Anova's advertisements falsely claimed that its products were better than the products of its competitors at large, citing Anova's claims that "its tuna products are superior to its competitors' offerings" and (2) that Anova's filtered-wood-smoking process gives it "an edge on most competition." Auto-Owners argues that King Tuna's assertions lack any clear, implied reference to a specific competitor, unlike the

16

advertisements at issue in <u>Vector</u>, which claimed superiority over the "leading brand" and were the subject of a lawsuit filed by the "industry leader."

In sum, Auto-Owners stresses that the Policy did not cover King Tuna's lawsuits because King Tuna never accused Anova of disparaging King Tuna by name or by clearly implied reference. Ultimately we need not decide whether King Tuna's lawsuits fell within the Policy's coverage because of an exclusion in the Policy, as explained below.[6]

### E. King Tuna's Lawsuits Fell Under the Policy's Exclusion

As noted above, the Policy excluded from coverage any "advertising injury" arising from "the failure of [Anova's] goods, products or services to conform with advertised quality or performance." King Tuna's lawsuits accused Anova of "misrepresent[ing] the nature, characteristics and qualities of its tuna products" by claiming that its tuna meat was prepared in a manner different from Anova's actual methods of preparation. Thus the lawsuits arose from the alleged failure of Anova's products to conform to their advertised quality.

Like the district court, we conclude that King Tuna's allegations against Anova in the Oregon Suit and the California Suit fell under this exclusion. <u>Scott,</u>

---

[6]The exclusion in <u>Vector</u> was different than the exclusion at issue here. In <u>Vector</u>, the policies excluded from coverage claims alleging that Vector had intentionally caused an injury or knowingly made a false statement in an advertisement. <u>Vector Prods., Inc.</u>, 397 F.3d at 1318. Here, the Policy excluded from coverage claims alleging that Anova's products failed to conform to statements made in Anova's advertisements about the quality of its tuna meat.

Blane, & Darren Recovery, LLC, 2017 WL 2311762 at \*3–4.  Accordingly, Auto-Owners had no duty to defend Anova against King Tuna's lawsuits.  Federal Ins. Co. v. Applestein, 377 So. 2d 229, 231 (Fla. Dist. Ct. App. 1979) ("No obligation to defend the action, much less to pay any resulting judgment, arises when the pleading in question shows either the non-existence of coverage or the applicability of a policy exclusion.").  The district court therefore did not err in granting judgment in favor of Auto-Owners based on the exclusion.

### F.  Anova Did Not Notify Auto-Owners of California Suit

Alternatively, the district court also found that Auto-Owners owed no duty to defend Anova against King Tuna's California Suit because Anova failed to properly notify Auto-Owners in accordance with the Policy.  Scott, Blane, & Darren Recovery, LLC, 2017 WL 2311762 at \*4–5.  We agree with that ruling too.

Under Florida law, a failure to provide timely notice of an occurrence in contravention of an insurance policy's provision is a legal basis for denial of recovery under the policy.  See Ideal Mut. Ins. Co. v. Waldrep, 400 So. 2d 782, 785 (Fla. Dist. Ct. App. 1981) ("Notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise.").  This is because an insured has an obligation to adhere to the terms of the insurance policy, and if it violates the policy's terms, a breach has occurred.  Indem. Ins. Corp. of DC v. Caylao, 130 So. 3d 783, 786 (Fla. Dist.

18

Ct. App. 2014).  A breach caused by a failure to give timely notice creates a rebuttable presumption of prejudice to the insurer.  Bankers Insurance Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985) ("If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced.").

The clear terms of the Policy required Anova to alert Auto-Owners of the California Suit: "If a claim is made or 'suit' is brought against any insured, [Anova] must . . . see to it that [Auto-Owners] receive written notice of the claim or 'suit' as soon as practicable."  The Policy also required Anova to notify Auto-Owners as soon as practicable of an "occurrence" or an offense which may result in a claim.

The parties agree that Anova failed to notify Auto-Owners of the California Suit.  They disagree, however, as to whether Anova had any obligation to notify Auto-Owners of the California Suit.

Anova argues that the California Suit was not a new "claim"—a term not defined by the Policy—but rather the same set of allegations that King Tuna voluntarily dismissed in the Oregon Suit only days before.  Anova maintains that, because Auto-Owners denied coverage for the same claim only days before when it refused to defend Anova against the Oregon Suit, Anova had no obligation to notify Auto-Owners when King Tuna filed the California Suit.

19

We disagree.  Anova ignores the clear language of the Policy, which triggered Anova's notice requirement upon any "occurrence," "claim," or "suit." Because the notice requirement was written in the disjunctive, the filing of any "suit" against Anova—and Anova conceded in its brief that the California Suit was indeed a new "suit"—obligated Anova to alert Auto-Owners.  Anova failed to fulfill this requirement, and therefore forfeited its right to have Auto-Owners provide a defense in the California Suit.

Moreover, we reject Anova's argument that the California Suit was not a new "claim."[7]  While both the Oregon Suit and the California Suit alleged the same wrongful conduct and advanced claims under the Lanham Act, their respective state law claims differed.  The Oregon Suit alleged a violation of Oregon's Unfair Trade Practices Act, Or. Rev. Stat. § 646.605 et seq.  The California Suit alleged a violation of California's Unfair Competition Law. Cal. Bus. & Prof. Code §§ 17200 et seq. and 17500.  Because the California Suit advanced a new state law claim, Anova had a duty to notify Auto-Owners.

---

[7]Because the term is not defined, Anova argues that it is ambiguous and should be construed in favor of the insured, citing Utica Mut. Ins. Co. v. Penn. Nat. Mut. Cas. Ins. Co. in support.  639 So. 2d 41, 43 (Fla. Dist. Ct. App. 1994).  Utica is inapposite to this case, concerning an insurance policy that limited coverage to $500,000 per claim and $1,500,000 aggregate, therefore raising the question of how to count each "claim."  The Utica court construed the term "claim" broadly to provide greater coverage.  The issue here is different— whether King Tuna brought a new claim against Anova in the California Suit.  We fail to see how the term "claim" in Auto-Owners' policy is ambiguous in this context, or how King Tuna's California Suit could be construed as anything other than a "claim" that triggered the notice requirement.

We also agree with the district court that Anova's failure to adhere to the Policy's notice requirement constituted a material breach of the Policy that substantially prejudiced Auto-Owners and released it from its duty to defend Anova. Scott, Blane, & Darren Recovery, LLC, 2017 WL 2311762 at *5 (citing Ramos v. NW Mut. Ins. Co., 336 So. 2d 71, 75 (Fla. 1976)).

In some instances, particularly if the facts are not disputed, the presence of "substantial prejudice" is determinable as a matter of law. Ramos, 336 So. 2d at 75. An insured's failure to comply with a policy requiring the insured to provide timely written notice to the insurer of a claim might negate an insurer's coverage obligation if the insurer is prejudiced by late notice. See Tiedtke v. Fid. & Cas. Co. of N.Y., 222 So. 2d 206, 209 (Fla. 1969); State Farm Mut. Auto. Ins. Co. v. Curran, 135 So. 3d 1071, 1079 (Fla. 2014). Here, Auto-Owners suffered substantial prejudice because Anova denied Auto-Owners the ability to attempt to negotiate a settlement of the California Suit and denied Auto-Owners the ability to examine the new state law claim advanced in the California Suit.

## III.  CONCLUSION

For the above reasons, we agree with the district court that Auto-Owners owed no duty to defend or indemnify Anova in the King Tuna lawsuits. We affirm the district court's final judgment in favor of Auto-Owners in this case.

**AFFIRMED.**

21